1-17-CV-00932-LY
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

# Roque v. City of Austin

Decided Nov 7, 2018

1-17-CV-00932-LY

11-07-2018

ALBINA ROQUE, et. al. v. CITY OF AUSTIN, and OFFICER JAMES HARVEL

ANDREW W. AUSTIN UNITED STATES MAGISTRATE JUDGE

**ORDER**

Before the Court, are three motions, along with their associated responses and replies: Plaintiffs' Motion to Compel Requests for Production and Interrogatories and Overrule Objections from Defendant COA (Dkt. No. 13); Plaintiffs' Motion to Strike Answers and Deem Admitted Responses to Requests for Admission to Defendant Harvel (Dkt. 20); and Defendant Harvel's Motion to Strike Answers and Deem Admitted Responses (Dkt. 37). The District Court referred the motions to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on the motions on September 11, 2018.

## I. GENERAL BACKGROUND

In this § 1983 lawsuit, Plaintiffs Albina and Vicente Roque, the parents of Jason Roque, bring suit against Austin Police Officer James Harvel, and the City of Austin (COA). The Roques assert that Harvel violated Jason Roque's Fourth and Fourteenth Amendment rights to be free from excessive force and unreasonable seizure. They also bring a § 1983 *Monell* claim against the COA. They request compensatory damages against all Defendants, and punitive damages against Harvel only. *2

2

This case involves the fatal shooting of Jason Roque by APD Officer Harvel on May 2, 2017. Plantiffs allege that on that date APD received a 9-1-1 call that a man was trying to harm himself.[1] When officers arrived, they saw Jason Roque and realized that he appeared suicidal. Dkt. No. 1 at 2. In front of everyone, Mr. Roque produced what was a BB gun, pointed it at his head, and asked officers to kill him. *Id*. at 3. Defendant Harvel was several houses away from Roque. *Id*. Roque was crying out for help, and turned away from the officers with the gun pointing to his head and walked several steps away. *Id*. Defendant Harvel then fired his rifle at Roque, whose back was partially turned. *Id*. This shot did not kill Roque. Roque then dropped the gun. Harvel fired and hit Roque again, but he still remained standing. Harvel then waited two seconds and fired a third bullet at Roque, which ultimately killed him. *Id*. Mrs. Roque was present for the encounter and pleaded for the police to help her son. *Id*. at 4. She called APD prior to their interaction with Jason Roque and made APD aware that Roque was suicidal and possessed a fake gun. *Id*. Harvel admits that he fired his gun three times, but disputes the specifics of Jason Roque's position and actions when he fired the three shots at Roque, and disputes any knowledge that what Roque was holding was a BB gun. Dkt. No. 7 at 2-4.

[1] Specifically, the Complaint alleges that "APD received a 9-1-1 call that Jason Roque, a Hispanic twenty-year-old, had a



1

BB gun and was threatening to harm himself." Dkt. No. 1 at 2. From the hearing, it is apparent that Harvel disputes knowing that the gun was a BB gun.

The Roques argue that APD disproportionately utilizes deadly force against unarmed males of color as compared to all others. Dkt. No. 1 at 4. They also argue that according to APD's own internal reviews, minorities are disproportionately victims of police abuse. Plaintiffs claim that even though senior officials, such as Austin Mayor Steve Adler, recognize that the APD has failed to stamp out institutional racism, that police officers, including Officer Harvel, have failed to receive *3 necessary training to combat institutional bias. *Id*. at 6. Plaintiffs allege that Harvel has been disciplined previously and in 2016 was involved in a similar incident to the present case, and shot and killed another Hispanic man who was threatening to kill himself. *Id*.

## II. STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). A party opposing discovery on the basis that it is overbroad and unduly burdensome bears the burden of showing why discovery should be denied. *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare,* *LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). The Court has broad discretion when determining whether to issue a protective order and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. ANALYSIS

### A. Plaintiffs' Motion to Compel as to COA (Dkt. No. 13)

By the time of the September 11, 2018 hearing, the parties had resolved some of the disputes raised by Plaintiffs' motion. However, two broad areas of dispute remain—disagreements over *4 records related to prior APD shootings, and access to the COA's internal communications on several issues. Plaintiffs in their motion categorized their outstanding discovery requests into eight broad groups, and the parties used these same categories to organize their arguments at the hearing. The Court thus uses the same eight categories to make its rulings.

**1. Harvel's disciplinary**, **use of force**, **Internal Affairs**, **and personnel records (Requests 49-51 and 57).**

At the hearing, the parties agreed there was no longer a dispute as to this category. The COA declared that it had supplemented its production and produced all of Harvel's disciplinary, use of force, Internal Affairs, and personnel records. Accordingly, the Motion to Compel as to this issue is **DENIED AS MOOT.**

**2. Records concerning prior instances of deadly**, **excessive**, **or arguably excessive force by APD officers** [2] **(Requests 6**, **8-16**, **19-20**, **22-28**, **74-75**, **and 77-78).**

[2] The parties reported they had resolved any issues concerning Requests 3-5 and 18, and the motion to compel as to these requests is **DENIED AS MOOT.**

The COA objects to these requests related to deadly or excessive force incidents not involving Officer Harvel as overbroad, unduly burdensome,

and because they exceed the scope of legitimate discovery under Rule 26. The COA also objects to the production of investigative files concerning other IA investigations not linked to this lawsuit on the grounds that Texas Local Government Code § 143.089 prohibits disclosure of unsubstantiated claims of misconduct made against police officers except with the individual police officer's written consent. The COA also objects to these requests to the extent that the information requested is protected by the attorney-client privilege, attorney work-product privilege, or any other applicable privilege. *5

The City's objection founded on the Texas statute fails, as Federal Rule of Evidence 501 dictates that federal common law, not state law, governs the privileges in federal question cases. When considering a federal claim, federal courts apply federal common law to determine the existence and scope of a privilege, though federal courts can consider state policies supporting a privilege in weighing the government's interest in confidentiality. *Willy v. Administrative Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); *Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *1 (W.D. Tex. November 17, 2014). But federal common law controls the privileges in federal court § 1983 actions.

The City also objects to these requests because it claims that materials related to other shooting incidents is not discoverable because of the work-product and attorney-client privileges. The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1991). Its aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. Rule 26 also protects attorney work product revealing the attorney's mental processes. *Id*. at 384. When considering whether to order discovery of work product the court shall "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3). The work product doctrine only permits discovery of attorney work product "if the party [seeking discovery] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3). Finally, Rule 26(b)(5) requires any party claiming a privilege or protection for "otherwise discoverable" material to "describe the nature *6 of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5).

The objectives of the attorney-client privilege apply to governmental clients. "The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." *Restatement (Third) of the Law Governing Lawyers* § 74, Comment *b*, (2018). The government may invoke the attorney-client privilege in civil litigation to protect confidential communications between government officials and government attorneys as government agencies and employees enjoy the same privilege as nongovernmental counterparts. *Id*. The party asserting the privilege has the burden of proving that the privilege applies to a given set of documents or communications. *Equal Emp't Opportunity Comm'n v. BDO USA*, L.L.P., 876 F.3d 690, 695 (5th Cir. 2017). The attorney client-privilege is interpreted narrowly and only applies when necessary to achieve its purpose. *Id*.

Many district courts have ruled on the applicability of the work-product doctrine and attorney-client privilege in cases involving § 1983 excessive force claims. For example, in *Amderson v. Marsh*, 312 F.R.D. 584 (E.D. Cal. 2015), the court ruled that the internal affairs investigatory report of a police shooting, which included findings of facts and opinions of the officer's

supervisor over whether the officer violated departmental policy during the incident, was not protected by either attorney-client or work-product privileges as the work-product privilege did not protect materials prepared in the ordinary course of business. Separately, in *Collins v. Mullins*, 170 F.R.D. 132 (W.D. Va. 1996), a § 1983 excessive force case, the court ruled that the statements obtained from witnesses during an internal investigation by the sheriff were not within the work product privilege because they were prepared in the ordinary course of governmental operations, not *7 for the purposes of litigation. Similarly, in *Mercy v. County of Suffolk*, 93 F.R.D. 520 (E.D.N.Y 1982), the court held that reports and other materials resulting from an internal police department investigation were not protected by either work-product or attorney-client privileges as they were prepared under the normal police practice of conducting investigations after a complaint was filed with the police department. The court also held that the materials contained primarily factual accounts of the events at issue and that facts were not protected by the work-product doctrine. *Id*. In addition, the court explained that the central purpose of an internal affairs investigation was to determine whether any disciplinary action should be taken against a police officer and thus the attorney-client privilege would not apply as none of the participants had any communications with an attorney. *Id*.

Here, Requests 6, 8-14, and 16 relate to video and audio footage of previous use of force incidents and thus clearly deal primarily in facts; hence they would not be covered by the work-product or attorney-client privilege. Similarly, Requests 74-75 & 77-78—which seek unredacted copies of police reports and all videos, audiotapes, audio files, CDs, or audio recordings concerning the Ray Ojeda and Micah Jester incidents, respectively—also appear to concern primarily factual issues, and were prepared in the ordinary course of business. Nothing in the COA's brief or in its comments at the hearing would suggest that the mental impressions, conclusions, opinions, or legal theories of an attorney would be touched upon if the documents sought by Requests 74-75 and 77-78 were produced. In addition, nothing in the COA's briefing or oral argument would suggest that confidential legal advice was being given or sought in documents responsive to Requests 74-75 and 77-78. Finally, Requests 19-20 and 22-28 concern the internal affairs investigations into previous shootings by the APD. Here too, nothing in APD's brief or statements at the hearing would suggest *8 that any attorney mental impressions or conclusions would be implicated, or that confidential legal advice or counsel was being sought, in regards to these documents. The work-product doctrine and attorney-client privilege are thus inapplicable to this material.

The COA also relies on "any other applicable privilege" as part of its objection to producing information related to officers other than Defendant Harvel. While Harvel does not specifically lay out any other privileges, the law enforcement privilege is likely to be most applicable. Federal courts have recognized a qualified privilege for governmental personnel records, which could include complaints against an officer, disciplinary actions taken, internal investigatory materials, and supervisory evaluations. 5 Martin A. Schwartz, *Section 1983 Litigation Federal Evidence* § 8.06 (2018). The Fifth Circuit has stated that the law enforcement privilege is a "qualified privilege protecting investigative files in an ongoing criminal investigation." *In re U.S. Dept. Of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006). In determining whether the doctrine applies, the court must balance "the government's interest in confidentiality against the litigant's need for the documents." *Coughlin*, 946 F.2d at 1160. In particular, courts should consider the *Frankenhauser* factors. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973); *In re*

*U.S. Dept. Of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006). The widely-cited *Frankenhauser* test consists of weighing ten factors:

• the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

• the impact upon persons who have given information of having their identities disclosed;

• the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

*9

• whether the information sought is factual data or evaluative summary;

• whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

• whether the police investigation has been completed;

• whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

• whether the plaintiff's suit is non-frivolous and brought in good faith;

• whether the information sought is available through other discovery or from other sources; and

• the importance of the information sought to the plaintiff's case.

*In re DHS*, 459 F.3d at 570. The privilege does not apply to "(1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions." *Id*. at 571. "Furthermore, the privilege lapses either at the close of an investigation or after a "reasonable time." *Id*. "Although a district court has considerable leeway in weighing the different factors . . . the failure to balance at all requires remand . . . to consider the respective interests . . . in the information protected by the law enforcement investigatory privilege." *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

In reviewing the particular requests objected to by the COA, it is not at all clear that the law enforcement privilege even applies, as it protects investigative files *in an ongoing criminal investigation*. Here, the COA—in neither its brief nor at the hearing—argued that the reports in question, including the Internal Affairs files of officers other than Harvel, relate to ongoing criminal investigations. Even if the privilege might possibly apply because the files are part of an ongoing *10 criminal investigation, the Court finds that in considering the ten *Frankenhauser* factors that the factors weigh in favor of releasing the materials in question. In particular, the fact that the information sought is crucial to the Plaintiffs' case and is not likely available through other discovery or other sources weighs strongly in favor of disclosure.

This is because in order to prove their *Monell* claims, Plaintiffs must show: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d. 536, 541-42 (5th Cir. 2010). To establish liability for failure to train, Plaintiffs must also show: (1) the municipality's training policy or procedure was inadequate, (2) the inadequate training policy was a "moving force" in causing a violation of the plaintiff's rights, and

(3) the municipality was deliberately indifferent in adopting its training policy. *Id*. at 544. A plaintiff must also show that the alleged policy or custom was "adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences" and that the violation of the particular constitutional right at issue was likely to follow. *O'Neal v. City of San Antonio*, 344 Fed. Appx. 885, 888 (5th Cir. 2009).

The Plaintiffs argue that the information they seek regarding known prior incidents of similar misconduct by other APD officers—including the video and audio recordings, Internal Affairs investigation files, and use of force reports—are crucial to advancing their pattern and practice claims, and go directly to proving the causation and deliberate indifference elements of municipal liability. The Court agrees with the Plaintiffs that the material in question is highly relevant. In fact, it's unclear how the Plaintiffs would be able to establish their pattern and practice claims *without* access to the information related to prior incidents not involving Officer Harvel. Being given access *11 to such material would also be in line with other decisions in this circuit that have permitted disclosure of law enforcement departments' investigative reports and files. See, *e.g.*, *Whitfield v. Riley*, No. 09-1877, 2009 WL 1067976, at *8 (E.D. La. Oct. 6, 2009); *Walters v. Breaux*, 200 F.R.D 271, 273 (W.D. La. Apr. 18, 2001); *Dinh v. Fenner*, Civ. A. No. 85-4625, 1987 WL 7911, at *1 (E.D. La. Mar. 11, 1987) *Tyner v. City of Jackson*, *Mississippi*, 105 F.R.D. 564, 566 (S.D. Miss. 1985).

Separately, the COA asserted in its brief and at the hearing that it would be overly burdensome to produce material related to officers other than Harvel. However, as the COA itself has noted, it has already produced roughly 49,000 pages of documents. In light of the relevance of the material, and the seriousness of the case—involving a death—the burden imposed on the City is proportional to the needs of the case and is not overly burdensome relative to what has already been produced.

Finally, the COA, either in its briefs or at the hearing, has made any effort to justify the privilege claims beyond making a "boilerplate" argument. As the party resisting discovery, the City bears the burden of demonstrating the existence of a privilege. *Hodges*, *Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). A court should exercise special caution in recognizing a privilege in a civil rights case because "application of the federal law of privilege, rather than state law, in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential." *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1213 (D.N.J. 1996). *12

Despite the fact that federal common law governs these issues, the Court is mindful of, and has considered, the City's privacy concerns, including those addressed by Texas Local Government Code § 143.089. Although the privacy concerns are not sufficient to prevent discovery, they do warrant that the documents be governed by a protective order. Therefore, based on Rule 26, and having considered the privileges claimed by the COA, the Court **ORDERS** the COA to disclose the material in question under this section to the Plaintiffs, but the City may designate the material as "confidential" under the Protective Order previously filed in this case (Dkt. No. 11).

**3. Records concerning the City's pattern of using excessive**, **or arguably excessive force**, **including data concerning APD's use of force against identified victims.** [3]

> [3] The parties resolved the disputes as to Requests 5 and 10 prior to the hearing, and thus the motion to compel is **DENIED AS MOOT** as to these requests.

*a. Interrogatory No. 9.*

The COA at the hearing argued that this request was overly broad, but was open to producing responsive material if the request were narrowed. Under Rule 26, and weighing whether the request is overly burdensome, the Court agrees with the Plaintiffs that the information is relevant to the Plaintffs' claims. In order to align the request with the needs of this case, the Court **ORDERS** that the COA produce records regarding all incidents since January 1, 2005, where an APD officer intentionally (i.e. non-accidentally) discharged a firearm, and only in cases involving humans (i.e., not including incidents where firearms were discharged at dogs or other animals).

*b. Interrogatory No. 12.*

The COA argued at the hearing and in their interrogatory response that this request, as stated, was overly broad and that it was not proportional to the needs of the case. The COA stated that it does not group lawsuits based on claims of racial discrimination. Based on the arguments presented, *13 the Court finds that the Plaintiffs' request is relevant and proportional to the needs of the case, but recognizes that the COA does not group cases based on racial discrimination. Therefore, the Court **ORDERS** the COA to provide Plaintiffs a list of cases filed on or after January 1, 2005—along with a copy of the complaints or petitions—where a claim of wrongful or excessive force and/or civil rights violations were alleged against APD or one or more of its officers.

**4. City or APD electronic documents mentioning Jason Roque, his family, or other shootings by Defendant Harvel or APD officers.**

As discussed at the hearing, the COA argues that it would be overly burdensome for it to conduct a search of all electronic communications among APD officers or City employees mentioning Jason Roque, his family, or other shootings by Defendant Harvel or APD officers. Based on the arguments presented by the COA and Plaintiffs at the hearing, the Court **ORDERS** counsel for the City and the Plaintiffs to meet, confer, and reach agreement on the custodians whose communications would be appropriate to search for information to the Jason Roque and Ray Ojeda shootings, and to then conduct such searches.

**5. Communications between the City and the Office of the Police Monitor or the Citizen Review Panel from January 1, 2005 to the present related to excessive force or racial profiling.**

*a. Interrogatories Nos. 15 and 17.*

The COA objected to Interrogatories 15 and 17 as overly broad and unduly burdensome. However, when weighing the Rule 26 factors, the Court finds that any formal communications between the APD and the Citizen Review Panel and the Office of the Police Monitor—such as, but not limited to, recommendations of reforms or changes that APD should make to its policies, procedures, or training —are relevant. Further, the Court cannot see how identifying and producing *14 these communications would be burdensome on the COA. The Office of Police Monitor and the Citizens Review Panel are both organizations exercising some level of oversight or review over APD, and would thus in all likelihood have kept their communications with the City and APD formal, and in writing. The Court thus **ORDERS** the COA to produce all communications between APD on the one hand, and the Citizen Review Panel or the Office of the Police Monitor on the other hand. To the extent Plaintiffs contend that informal communications might exist between the two entities and APD, the Court is not in a position at this time to assess whether such communications exist, and if so, whether requiring their production would be unduly burdensome. The Court therefore **ORDERS** the City and Plaintiffs to meet to assess the record of informal communications and to come to an agreement on

the universe of informal communications to be provided. If the parties are unable to reach agreement, they should report back to the Court.

*b. Interrogatory No. 18*

Much like the information requested in Interrogatories 15 and 17, the Court finds that the information sought in Interrogatory 18—whether APD has made any reforms or taken any action as a result of any investigations by or complaints made to the U.S. Department of Justice—is discoverable. The Court therefore **OVERRULES** the COA's objection, and it is ordered to respond to this interrogatory.

6. **APD's policies and procedures, and communications pertaining to decisions to (or not to) revise relevant policies and procedures.**

Based on the arguments at the hearing and in an attempt to narrow the universe of requests related to this request, the Court **ORDERS** the Plaintiffs to serve an interrogatory on the COA—to *15 which the City shall respond—listing the specific events Plaintiffs are interested in, and asking whether the COA or APD changed any of its policies or procedures after those events.[4]

> [4] The motion to compel addressed both training records and curriculum materials for any training James Harvel received concerning relevant subjects, as well as all trainings or re-enactments related to specifically identified prior instances of deadly, excessive, or arguably excessive force by an APD officer. At the hearing the parties agreed there was no longer any dispute regarding training records and curriculum materials for any training James Harvel received. Further, the City represented it had supplemented its initial disclosures with all of Harvel's training records, and that the material it had produced would allow Plaintiffs to assess whether any changes in the training materials or to role-playing scenarios were made as a result of high-profile incidents with APD in the past. Thus, as of the hearing, the parties were not contesting the material requested under this category. Accordingly, the Motion to Compel as to these issues is **DENIED AS MOOT** --------

## B. Motions to Deem Requests Admitted (Dkt. 20 & 37).

The Plaintiffs and Harvel each request the Court to strike the other's answers to certain requests for admission, and to deem those requests admitted. Plaintiffs argue that the Court should deem their requests admitted because Harvel's responses are improperly argumentative, evasive, fail to address the subject matter of the requests, and do not deny the facts in Plaintiffs' requests, all of which disregards the purpose of admissions. Dkt. No. 20 at 1-2. In a similar vein, Harvel argues that Plaintiffs' responses to some of his requests for admission are improper and the requests should be deemed admitted. He contends statements Plaintiffs allegedly made to police regarding the subject matter of Requests 1-4 prevent any answer other than "admitted," and that the facts inquired about in Requests 10-13 are obvious and readily apparent and should be admitted.

Neither party is correct. Rule 36 is designed "to define and limit the matters in controversy between the parties." 8b Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2252 (2018). Among the many things a party may do in response to a request for admission is to set out the reasons why it cannot truthfully admit or deny the matter, and to object to the request *16 for an admission. *Federal Practice and Procedure: Civil* at § 2259. According to a plain reading of Rule 36, parties are not entitled to litigate whether their opponent was justified in denying a particular request. The court in *Foretich*, a leading case on the issue, explained:

17

The defendants are incorrect in their assumption that the right to challenge the "sufficiency" of a response is the equivalent of the right to challenge the veracity of a denial. According to Wright and Miller, a response may be considered insufficient where it "is not 'specific' or . . . the explanation or failure to admit or deny is not 'in detail' as the rule requires." *Id*. at § 2263. Where a response is "insufficient" in this manner, the rule authorizes the Court to either treat the matter as admitted (essentially treating the insufficient answer as non-responsive) or order that "an amended answer be served." FED. R. CIV. P. 36(a). According to the advisory committee notes to Rule 36, the purpose of allowing motions to challenge the sufficiency of responses is to clarify how an ambiguous response will be treated so that each party is aware, as the litigation progresses, whether or not a particular issue has been admitted or is still in dispute. *See* FED. R. CIV. P. 36 advisory committee's note.

*Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993). Other courts have reached similar conclusions, stating that Rule 36 is not a discovery tool authorizing courts to make the factual determinations that the parties here seek. *Schmalz, Inc. V. Better Vacuum Cups, Inc.*, No. 16-10040, 2017 WL 3301326, at *2 (E.D. Mich. July 14, 2017) (rejecting a "request to engage in fact finding" and letting responses stand); *Point Blank Solutions v. Toyobo America*, No. 09-6166-CIV, 2011 WL 742657, at *4 (S.D. Fla. Feb. 24, 2011) (refusing to deem requests admitted as doing so would require the court to conduct a mini-trial and resolve disputed factual issues); *Moore v. Daniel Enterprises*, No. 04-CV-4081, 2006 WL 753147, at *1 (W.D. Ark. March 22, 2006) (denying motion because Rule 36 does not allow a court to decide "the accuracy of a denial" or to deem a request admitted because the "denial is asserted to be unsupported by the evidence."). Accordingly, both parties' motions are **DENIED.** *17

## IV. CONCLUSION

Therefore, based on the preceding discussion, the Plaintiffs' Motion to Compel Requests for Production is **GRANTED IN PART AND DENIED IN PART** as set forth above (Dkt. No. 13). The additional production ordered above shall be made no later than **December 7, 2018.** Separately, Plaintiffs' Motion to Strike Answers (Dkt. No. 20) and Defendant's Motion to Strike Answers (Dkt. No. 37) are **DENIED.**

SIGNED this 7th day of November, 2018.

/s/_____

ANDREW W. AUSTIN

UNITED STATES MAGISTRATE JUDGE

