UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



RANDY AVILES,

§
§

   *Plaintiff*,

§
§

Civil Action No. 4:22-cv-03571

v.

§
§

RIGOBERTO SALDIVAR & CITY
OF PASADENA, TEXAS,

§
§
§

   *Defendants*.

§
§

### DEFENDANT CITY OF PASADENA'S
### MOTION FOR SUMMARY JUDGMENT

For the following reasons, Defendant City of Pasadena, Texas, (hereafter City) moves the Court, under FED. R. CIV. P. 56, for summary judgment in favor of the City.

### CERTIFICATE OF CONFERENCE

1.   The parties' counsel conferred on May 9, 2024. Plaintiff opposes the relief sought in this dispositive motion.

TABLE OF CONTENTS

Certificate of Conference ...................................................................... i

Table of Contents.................................................................................. ii

Table of Authorities ........................................................................... iv

Table of Exhibits................................................................................ vii

Nature and Stage of the Proceeding ................................................... 1

Issue ...................................................................................................... 1

Summary of the Argument ................................................................... 1

Summary of the Evidence ................................................................... 2

Standard of Review.............................................................................. 5

Argument and Authorities ................................................................... 7

    I.  There is no evidence the City failed to discipline, train, or supervise
       Officer Saldivar. ........................................................................ 7

        A.  The City trained Officer Saldivar............................................. 8

        B.  The City supervised Officer Saldivar. ................................... 11

        C.  Disciplinary action against Officer Saldivar was not defensible
            under Texas law before Officer Saldivar shot Aviles....................... 12

        D.  Disciplinary action against Officer Saldivar was not appropriate
            under Texas law, or required under the Constitution, after
            Officer Saldivar shot Aviles. .................................................. 13

        E.  There is no evidence the City's policymaker was deliberately
            indifferent. ............................................................................ 14

        F.  There is no evidence the City's was a moving force that directly
            caused a deprivation of Aviles' rights.................................... 18

    II.  There is no evidence the City has a governmental custom or practice of
        protecting officers who use excessive force. ............................... 19

A.  The activities Plaintiff's allegation is premised on are not
    nefarious.................................................................................19

B.  The City cannot protect officers who use excessive force.................20

Conclusion and Prayer.................................................................22

Certificate of Word Count...........................................................23

Certificate of Service.................................................................23

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986) ............................................................... 5, 6

*Baker v. Putnal,*
    75 F.3d 190 (5th Cir. 1996) ............................................... 10

*Benavides v. County of Wilson,*
    955 F.2d 968 (5th Cir. 1992) .......................................... 8, 10

*Board of the County Commissioners of Bryan County Oklahoma*
    *v. Brown,*
    520 U.S. 397 (1997) ......................................................... 7, 14

*Brown v. Bryan County,*
    219 F.3d 450 (5th Cir. 2000) ............................................ 11

*Burge v. St. Tammany Parish,*
    336 F.3d 363 (5th Cir. 2003) ............................................ 17

*Carnaby v. City of Houston,*
    636 F.3d 183 (5th Cir. 2011) ..................................... 6, 7, 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1996) .......................................................... 5, 6

*Conner v. Travis County,*
    209 F.3d 794 (5th Cir. 2000) ............................................ 10

*Connick v. Thompson,*
    560 U.S. 51 (2011) ...............................................................7

*Curran v. Aleshire,*
    800 F.3d 656 (5th Cir. 2015) ............................................ 13

*Eastman Kodak Co. v. Imagetech Servs.,*
    504 U.S. 451 (1992) ..............................................................6

iv

*Garcia v. Orta*,
    47 F.4th 343 (5th Cir. 2022) ........................................................... 13

*James v. Harris County*,
    577 F.3d 612 (5th Cir. 2009)........................................................... 18

*Liggins v. Duncanville*,
    52 F.4th 953 (5th Cir. 2022) .................................................*passim*

*Martinez v. Maverick County*,
    507 Fed. Appx. 446 (5th Cir.), *cert. denied*, 2013 U.S. LEXIS
    4806 (2013) ..................................................................................... 10

*O'Neal v. City of San Antonio*,
    344 Fed. Appx. 885 (5th Cir. 2009) ............................................. 10

*Olabisiomotosho v. City of Houston*,
    185 F.3d 521 (5th Cir. 1999)............................................................6

*Orr v. Copeland*,
    844 F.3d 484 (5th Cir. 2016)......................................................... 13

*Peña v. City of Rio Grande*,
    879 F3d 613 (5th Cir. 2018)........................................................... 10

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009).......................................................... 22

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002)................................................. 7, 9, 10

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001).................................................... 8, 21

*Roberts v. City of Shreveport*,
    397 F.3d 287 (5th Cir. 2005)............................................... 7, 8, 9, 10

*Scott v. Harris*,
    550 U.S. 372 (2007).................................................................... 6, 13

*Snyder v. Trepagnier*,
    142 F.3d 791 (5th Cir. 1998)..................................................... 8, 16

*Wallace v. Tex. Tech Univ.*,
  80 F.3d 1042 (5th Cir. 1996)............................................................................5

*Webb v. Town of Saint Joseph*,
  925 F.3d 209 (5th Cir. 2019)......................................................................... 11

*Webster v. Houston*,
  735 F.2d 838 (5th Cir. 1984).......................................................................... 22

## Statutes

42 U.S.C.S. § 1983............................................................................... 7, 11, 16, 21

TEX. OCC. CODE Chapter 1701 ..............................................................................9

TEX. OCC. CODE § 1701.251 ...................................................................................9

TEX. OCC. CODE § 1701.352(d) ..................................................................... 10, 12

## Other Authorities

Fourth Amendment ..................................................................................................9

Fifth Amendment................................................................................................... 19

Sixth Amendment .................................................................................................. 19

## TABLE OF EXHIBITS

Exhibit 1    Comprehensive Declaration of Chief Joshua Bruegger's testimony

Exhibit 2    Declaration of Officer Saldivar's testimony regarding Schenk shooting

Exhibit 3    Excerpts of Officer Saldivar's deposition testimony re: Schenk shooting

Exhibit 4    Excerpts of City's testimony regarding Schenk shooting

Exhibit 5    Excerpts of Assistant Chief Jerry Wright's testimony - Schenk shooting

Exhibit 6    Excerpts of Lieutenant Joe McGill's testimony re: Schenk shooting

Exhibit 7    Declaration of Captain Albert Rodriguez's testimony re: Schenk shooting

Exhibit 8    Recording from Officer Saldivar's body worn camera - *Schenk* shooting

Exhibit 9    Recording from Officer Saldivar's dash camera in Schenk shooting

Exhibit 10   Harris County Institute of Forensic Sciences gunshot residue report -Schenk shooting

Exhibit 11   Harris County Grand Jury No Bill Notification – Schenk shooting

Exhibit 12   Declaration of Chief Joshua Bruegger's testimony re: Schenk shooting

Exhibit 13   Excerpts from Pasadena's Charter and Code of Ordinances

Exhibit 14   City's business records declaration

Exhibit 15   Excerpts from Sergeant Craig Hamilton's testimony re: Schenk shooting

Exhibit 16   Excerpts from Pasadena Police Department Policy

Exhibit 17   Report of Officer Rigoberto Saldivar's TCOLE history

Exhibit 18   Declaration of Expert Marlin Price's testimony

Exhibit 19   Administrative Investigation Report Control No. 1337 (Aviles)

Exhibit 20   January 12, 2021, body cam recording

Exhibit 21   Correspondence between Officer Saldivar and Chief Bruegger

Exhibit 22   Excerpts from Plaintiff, Randy Aviles' deposition testimony

Exhibit 23   Excerpts from City's testimony in *Aviles* litigation

Exhibit 24   Excerpts from Detective Michael Cooper's testimony in *Aviles* litigation

Exhibit 25   Excerpts from Sergeant Craig Hamilton's testimony in *Aviles* litigation

Exhibit 26   Excerpts from Detective Sebastian Mata's testimony in *Aviles* litigation

Exhibit 27   Excerpts from Detective Mauricio Reyes testimony in *Aviles* litigation

Exhibit 28   Pasadena Police Department Internal Affairs investigation # 1167 (Heckford)

Exhibit 29   Officer Saldivar's dash cam video from April 16, 2018 (Ramirez)

Exhibit 30   January 12, 2021 dash cam video (Aviles)

Exhibit 31   Officer Saldivar's dash cam recording from April 16, 2018 (Ramirez)

Exhibit 32   Excerpts from Chief Josh Brugger's deposition in Aviles

Exhibit 33   Pasadena Civil Service Rules

Exhibit 34   City's business records declaration

Exhibit 35   Verification of Summary Judgment Evidence

Exhibit 36   Administrative Investigation Report Ramirez

Exhibit 37   Administrative Investigation Report Schenk

## NATURE AND STAGE OF THE PROCEEDING

2.    Plaintiff filed suit. [Doc. 1]. The City filed a motion to dismiss. [Doc. 7-10]. The Court entered an Order denying the City's motion to dismiss. [Doc. 30]. City answered and asserted defenses. [Doc. 32]. Discovery has closed and City timely moves for summary judgment. [Doc. 33].

## ISSUE

3.    If Plaintiff has shown the admitted summary judgment evidence raises a genuinely disputed material fact regarding whether the City violated Plaintiff's constitutional rights under either theory of liability Plaintiff has alleged.

## SUMMARY OF THE ARGUMENT

4.    The only evidence the Court need analyze to find the City is entitled to summary judgment are exhibits 1, 8, 18. In an abundance of caution, however, the City presents the Court with all the evidence implicated by Plaintiff's insupportable allegations. Exhibits 1 and 18 provide evidence which shows the City has no unconstitutional policy, the City's policymaker is not deliberately indifferent, and that the City did not violate the Plaintiff's rights. The recording identified as Exhibit 8 disproves the Plaintiff's allegations that Police Chief Bruegger erred in not disciplining Officer Saldivar based on the Schenk shooting. Those exhibits show the City is entitled to summary judgment. The other exhibits merely solidify that result.

1

SUMMARY OF THE EVIDENCE

### *Ramirez and Schenk*

5.     The City hired Rigoberto Saldivar as a police cadet on March 2, 1998, and promoted him to Probationary police officer on August 17, 1998. Twenty years later, on April 16, 2018, Officer Saldivar *shot at* Angel Ramirez while Ramirez held a handgun in his hand. The gunshots did not strike Ramirez. [Ex. 14; 18, ¶ 19; 29; 31; 36]. On November 21, 2018, Officer Saldivar fatally shot Nathan Schenk, during a physical struggle after Officer Saldivar chased Mr. Schenk who fled the initial traffic stop scene on foot. [Exs. 2, ¶ 8; 9; 12, ¶ 21; 18 ¶ 23]. City detectives and investigators of the Harris County District Attorney's Office investigated both events. [Exs. 18, ¶ 24; 36; 37]. A Grand Jury did not initiate any prosecution against Officer Saldivar based upon these events. [Ex. 11].

6.     In addition to the criminal investigations, a police department internal affairs investigator performed administrative investigations of both events and police department supervisors, administrators, and the police chief evaluated the administrative investigation to determine whether disciplinary action against Officer Saldivar was appropriate. [Exs. 1, ¶ 4; 7, ¶ 21; 18, ¶¶ 27, 89; 25, p. 33 LL 22-25].

7.     The Ramirez recording proved Officer Saldivar fired at Ramirez after Officer Saldivar shined a light that illuminated a pistol in Ramirez's hand.

2

[Exs. 29; 31; 34; 36 p.4 ¶ 3].  Recordings exist that depicted portions of the Schenk incident, where not all aspects of the events were clearly visible, and Officer Saldivar's account established sufficient basis to determine the use of force justified. [Exs. 1 ¶ 37; 3, p. 69, LL 14-21; 28; 40].

8.    The lead CID Detective investigating the Schenk shooting developed an opinion, based on his interpretations of the bodycam video, that Officer Saldivar shot Schenk while he was crawling on the ground away from Officer Saldivar. [Exs. 24, p. 63, LL 6-17; 34; 37]. The Detective and a Sergeant, concurring with the opinion, reported verbally to the police department internal affairs investigator and police department administrators, including City police chief Joshua Bruegger. The Detective documented his conclusions in a written report. [Exs. 24, p. 79, LL 11-17].

9.    The internal affairs investigator and police administrators, including Chief Bruegger, studied the same recording on which the two Detectives based their opinions, but did not conclude the recording demonstrated Officer Saldivar shot Schenk while he was crawling away. [Exs. 1 ¶ 41; 5, p. 32, LL 5-13; 6, p. 66, LL 14-17; 14; 37 p. 28, ¶ 3]. The internal affairs investigator and administrators, including Chief Bruegger, further concluded the objective evidence, which included gunshot residue test results and a wound in Schenk that he could not have sustained being shot while crawling away, disproved

the Detectives interpretations of the practically black recording. [Exs. 1 ¶ 46; 8; 10].

10.    Pasadena police administrators, including the police chief, and the Harris County District Attorney's office reviewed the Ramirez incident, with the Harris County grand jury also reviewing the Schenk case.  Investigations and recordings concluded that neither investigation supported a finding that Officer Saldivar violated the police departments facially constitutional written policies prohibiting officers from using excessive force. [Exs. 1, ¶ 4; 4, pp. 28-29, LL 15-25, 1-5; 15; 16; 18, ¶ 21, 100; 37].

### Aviles

11.    On January 12, 2021, Officer Saldivar shot Plaintiff Randy Aviles while he drove away from a traffic stop. [Exs. 18, ¶ 37; 19 p. 3268, ¶ 3; 22; 24; 20; 30]. City detectives and investigators of the Harris County District Attorney's Office investigated this event. [Exs. 1, ¶ 4; 18, ¶ 38; 23. p. 9, LL 16-25; 27, p. 10, LL 23-25; 26, p. 32, LL 1-4].

12.    Chief Bruegger was informed of the Aviles shooting within an hour of it occurring. [Ex. 32, p. 186, LL 17-22]. The following morning, Chief Bruegger reviewed recordings of the events. Chief Bruegger reviewed recordings of every officer-involved shooting that occurred during his tenure as police chief. When Chief Bruegger saw the Aviles recordings, the Chief had concerns about Officer Saldivar firing into a vehicle that was driving away. Chief Bruegger, in

accordance with city ordinance, prepared a memorandum informing then-Officer Saldivar he was placed on administrative leave. Because of his concerns about the propriety of Officer Saldivar's action in the Aviles shooting, Chief Bruegger never returned Officer Saldivar to Pasadena police duties after he shot Aviles. [Ex. 1, ¶ 2; 13 p. 11, §30-3].

13.    Chief Bruegger assigned Officer Saldivar to perform civilian employee functions in the police department property room while awaiting a Grand Jury review of the Aviles shooting.  Before the Grand Jury considered the Aviles shooting, Officer Saldivar retired from the Pasadena police department. After he retired, a Harris County Grand Jury initiated a criminal prosecution against Officer Saldivar based upon the Aviles event. [Exs. 1, ¶ 3; 21].

## STANDARD OF REVIEW

14.    Substantive law identifies material facts and only disputes over facts that might affect the outcome of the suit under governing law preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986). The movant bears the initial burden of identifying the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1996). The movant need not negate elements of non-movant's case. *See Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

15.    Movant may identify the non-movant has no evidence to support an essential element of the claim. *Celotex*, 477 U.S. at 323. In opposition to a motion for summary judgment, the non-moving party must identify facts, *based upon admissible evidence*, showing an issue for trial. *See Anderson*, 477 U.S. at 250.

16.    While evidence is viewed in the light most favorable to the opposing party and justifiable inferences are drawn in her favor, "only reasonable inferences can be drawn from the evidence in favor of the non-moving party." *Eastman Kodak Co. v. Imagetech Servs.*, 504 U.S. 451, 469 n. 14 (1992). Factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

17.    When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Although we review the evidence in the light most favorable to the non-moving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott*, 550 U.S. at 381). "A court …

6

need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." *Id.*

## ARGUMENT AND AUTHORITIES

**I.    There is no evidence the City failed to discipline, train, or supervise Officer Saldivar.**

18.    "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 560 U.S. 51, 60 (2011). The Constitution provides protections from a government causing a deprivation, but the Constitution does not require a governmental entity to enact a transcendent policy preventing violations. *See Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). When "a plaintiff seeking to establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate a plaintiff's rights must demonstrate the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 407 (1997). "Under the deliberate indifference framework, a party must prove there's a 'causal link' between the policy and their harm, and that the defendant had the 'requisite degree of culpability.'" *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (quoting *Brown*, 520 U.S. at 404). "Culpability,

in this context, is a complete disregard of 'the risk that a violation of a particular constitutional … right [would] follow the decision.'" *Liggins supra* (quoting *Brown*, 520 U.S. at 411)). "That's a 'high standard.'" *Id.* (quoting *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)). Plaintiffs have not identified evidence of an unlawful policy of failing to discipline, train, or supervise Officer Saldivar for which the City's policymaker is liable. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001).

### A. The City trained Officer Saldivar.

19.    The Texas Commission on Law Enforcement (TCOLE) transcript proves Officer Saldivar had extensive training. [Ex. 17]. Additionally, law enforcement administrator expert, Marlin Price, provided uncontroverted testimony regarding Officer Saldivar's extensive training. [Ex. 18, ¶¶ 18, 32-34, 49-56, 90]. A constitutionally adequate training program only must "enable officers to respond properly to the usual and recurring situations with which they must deal." *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). In evaluating the sufficiency of allegations to show such a claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). To support a claim "based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is deficient." *Roberts*, 397 F.3d at 293. "In this inquiry, mere proof that the injury

8

could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id*.

> Neither will it suffice to prove than an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. *And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.*

*Pineda*, 291 F.3d at 333.

20.    Also, the Court may properly take judicial notice of statutes in Chapter 1701 of the Texas Occupations Code which demonstrate that the State of Texas has delegated TCOLE as the agency in Texas responsible for identifying and establishing peace officer training and licensing standards that are sufficient to prepare Texas peace officers to perform the duties entrusted to them. This legislative mandate specifically designates TCOLE as the State agency responsible for establishing a statewide comprehensive education and training program for peace officers to qualify to obtain a peace officer license. Chapters 1701 of the Texas Occupations Code mandates TCOLE training curriculum specifically includes training regarding Fourth Amendment issues.

21.    Specifically, TEX. OCC. CODE § 1701.251 provides that TCOLE "shall establish and maintain training programs for officers." Section 1701.253

further requires that TCOLE "shall establish a statewide comprehensive education and training program on civil rights…" and which "covers the laws of [the state of Texas] and of the United States pertaining to peace officers" for all licensed law enforcement officers in Texas. Section 1701.352(d) additionally requires that, within 24 months of appointment as a supervisor, all law enforcement officer supervisors receive training regarding supervising police officers. Sections 1701.307 and 1701.351 provide that, to obtain and maintain, a peace officer license, an officer must satisfactorily meet all TCOLE training and licensing standards.

22.    No federal court has held TCOLE training standards fail to meet minimum constitutional requirements and several courts have held otherwise. *Compare, Zarnow*, 614 F.3d 171; *Martinez v. Maverick County*, 507 Fed. Appx. 446, 448-49 (5th Cir.), *cert. denied*, 2013 U.S. LEXIS 4806 (2013); *O'Neal v. City of San Antonio*, 344 Fed. Appx. 885, 888-89 (5th Cir. 2009); *Roberts*, 397 F.3d at 293; *Pineda*, 291 F.3d at 334; *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Baker v. Putnal*, 75 F.3d 190, 199-200 (5th Cir. 1996); *Benavides*, 955 F.2d at 973.

23.    Moreover, the evidence disproves the assertion Officer Saldivar received "no training whatsoever," which is needed to support a claim based on alleged constitutionally deficient police training policy. *See Peña v. City of Rio Grande,* 879 F3d 613, 624 (5th Cir. 2018).

10

**B.    The City supervised Officer Saldivar.**

24.    Of the three ways to show an "official policy" under Section 1983, Plaintiff narrowed his claims to number three, that under "rare circumstances," a single act can be considered a policy if done by an official or entity with "final policymaking authority." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (citations and quotations omitted).

25.    But Plaintiffs' failure to supervise claim fails because the City did provide supervision to Officer Saldivar, not *no supervision* whatsoever. *See Brown v. Bryan County*, 219 F.3d 450, 462-63 (5th Cir. 2000).

26.    Moreover, the City provided more that merely some supervision to Officer Saldivar. [Ex. 18, ¶¶ 57, 107]. Officer Saldivar received written evaluations from his supervisors. [Ex. 18, ¶ 57]. The police department has a Supervisory Intervention Program that allows supervisors to administratively correct officer behavior as necessary to improve performance as well as lower levels of administrative discipline such as written reprimands. [Ex. 18, ¶ 58]. The Department also began using Use of Force audits in 2019 to better track use of force and identify trends and issues for future training. [Ex. 18, ¶ 55]. Also, the uncontroverted evidence that the Department conducted extensive investigations of each of the three instances in which Officer Saldivar fired a shot refutes the allegation the City did not supervise Officer Saldivar.

27.    And Pasadena operates under Texas police civil service laws that provides for police supervision at various ranks withing the Department. [Ex. 1, ¶¶ 16, 18-19, 31-33; 18, ¶ 94]. This is complimented with the supervision training that TCOLE requires throughout Texas. *See* TEX. OCC. CODE § 1701.352(d). The City supervised Officer Saldivar.

### C.    Disciplinary action against Officer Saldivar was not defensible under Texas law before Officer Saldivar shot Aviles.

28.    Disciplinary action against Officer Saldivar was not defensible under Texas law. The record contains extensive evidence regarding operation of Texas police civil service laws that dictate the scope of disciplinary policy for City police officers, including Officer Saldivar. In order to defend subjecting Officer Saldivar to disciplinary action, the City must have sufficient evidence to prove Officer Saldivar violated a civil service rule. [Ex. 33]. The Summary of the Evidence section of this motion shows that the facts that existed before Officer Saldivar shot Aviles did not support disciplinary action against Officer Saldivar. The only basis for criticizing Officer Saldivar's decision to shoot Schenk rested upon the footing of a recording of darkness that does not distinctly depict anything. [Ex. 8].

29.    The Court has the Schenk recording in the record and no doubt will make its independent assessment of the discernability of the content of the recording. And regardless of the creative interpretations of the two Detectives who claim

12

to be capable of seeing Officer Saldivar shoot Schenk as he crawls away, no reasonable jury who views the recording that interpretation is based on could reasonably accept the Detectives testimony in that regard. *See Scott*, 550 U.S. at 381; *Garcia v. Orta*, 47 F.4th 343, 349-53 (5th Cir. 2022); *Curran v. Aleshire*, 800 F.3d 656, 66364 (5th Cir. 2015); *Orr v. Copeland*, 844 F.3d 484, 490-91 (5th Cir. 2016); *Carnaby*, 636 F.3d at 187. Particularly, when the objective evidence, which included gunshot residue test results and a wound Schenk sustained could not resulted from being shot while crawling away.

**D. Disciplinary action against Officer Saldivar was not appropriate under Texas law, or required under the Constitution, after Officer Saldivar shot Aviles.**

30.    After Officer Saldivar shot Aviles, disciplinary action against Officer Saldivar was not appropriate under Texas law and not required under the Constitution. The morning after Officer Saldivar shot Aviles, Chief Bruegger reviewed recordings that depicted the Aviles shooting. When Chief Bruegger saw the Aviles recordings, the Chief prepared a memorandum relieving then-Officer Saldivar from performing police duties and Officer Saldivar never against performed a police duty in the months thereafter while he remained in the City's employ awaiting review of the shooting by a Harris County Grand Jury. [Ex. 1, ¶ 2].

31.    Before the Grand Jury considered the Aviles shooting, Officer Saldivar retired from the Pasadena police department. After he retired, a Harris County

Grand Jury initiated a criminal prosecution against Officer Saldivar based upon the Aviles event. By the time the Grand Jury charged Officer Saldivar with committing a crime by shooting Aviles, the City could no longer initiate discipline against Officer Saldivar because he had retired from the City's employ. [Ex. 1, ¶ 3, 8].

32.     Chief Bruegger and Expert Price well-explained the reasons it was not appropriate or required under the Constitution to prematurely initiate disciplinary action against Officer Saldivar after he was prohibited from performing police duties. [Ex. 1, ¶¶ 4, 40; 18, ¶¶ 43-48, 78-80; 32, pp. 200-202, 205-206, p. 210, l. 18-p. 211, l. 22].

> **E.     There is no evidence the City's policymaker was deliberately indifferent.**

33.     "Claims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof." *Bryan County,* 520 U.S. at 406. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bryan County*, 520 U.S. at 407 (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A showing of simple or even heightened negligence will not suffice." *Id.*

34.    Plaintiff has also not satisfied the "high standard" of culpability required to establish deliberate indifference of the City's policymaker. See *Liggins*, 52 F.4th at 955. There is no evidence the City's policymaker deliberately ignored a known or obvious risk a 20-year veteran police officer would likely shoot Aviles without justification to do so. Instead, the evidence proves no reasonable jury, or governmental policymaker, could interpret the Schenk recording to show that Officer Saldivar was unjustified in shooting Schenk. Without crediting the Schenk recording, there is no information a governmental policymaker could reasonably rely on to conclude Officer Saldivar posed a risk of using unconstitutional force.

35.    Chief Bruegger and Expert Price provided additional testimony which establishes the City's policymaker was not deliberately indifferent. The City's policymaker could reasonably rely on the adequacy of training provided through TCOLE that complied with Texas standards to be sufficient to prepare Officer Saldivar to perform police duties. The City's policymaker could reasonably rely on TCOLE and civil service supervisory standards to be sufficient to provide Constitutionally sound supervision to Officer Saldivar, particularly when the City provided even more supervision through officer evaluations and even more TCOLE training to Officer Saldivar than the State of Texas required of any peace officer in Texas.

36.    Also, the City's policymaker could reasonably rely on the comprehensive investigations performed of all officer shootings, including those involving Officer Saldivar, as satisfying Constitutional standards. Those investigations informed the City's policymaker that Pasadena officers seldom used excessive force, but when a few officers had, those officers were subjected to removal from City employment and in a few instances prosecution on criminal charges.

37.    The City's policymaker could further rely on the adequacy of the facially Constitutional written Pasadena police department policies prohibiting officers from using excessive force. And possibly most importantly, a governmental City policymaker could reasonably rely on the adequacy of federal and state criminal laws that subject any officer who uses excessive force to prosecution and confinement through a criminal justice process through Harris County officials and Grand Juries the City's policymaker has no reliable means of controlling. [Ex. 1, ¶¶ 38, 44, 47-50; 18, ¶¶ 103-107].

38.    Moreover, the Fifth Circuit has "stressed that a single incident is usually insufficient to demonstrate deliberate indifference." *Liggins*, 52 F.4th 953, 956 (5th Cir. 2022) (quoting *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005)). Plaintiff "must demonstrate 'at least a pattern of similar incidents in which the citizens were injured to establish the official policy requisite to municipal liability under section 1983.'" *Snyder*, 142 F.3d at 798-99 (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989));

16

*Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). "After all, repetition may be the only thing that puts a policymaker on 'sufficient notice' that a constitutional violation may spring from their single decision." *Liggins*, 52 F.4th at 956 (quoting *Brown*, 219 F.3d at 460).

39.     In *Henderson v. Harris Cnty,* the Fifth Circuit affirmed dismissal of claims for being tazed while resisting arrest. *Henderson,* 51 F.4th at 129. Plaintiffs alleged the Harris County failed "to adopt any policies whatsoever to govern Deputy Garduno's use of force," "failed to train Deputy Garduno in the proper use of a [t]aser," and "failed to supervise Deputy Garduno." *Id.* at 129. The Circuit Court agreed plaintiffs' claims relied on failure to formulate an adequate policy on taser usage, treated the supervisory liability claim as encompassed in plaintiffs' other claims, and reviewed only plaintiffs' failure to train claim. *Id.* at 130 n.3. Unable to show any patterns of similar constitutional violations, plaintiffs argued their claims fall within the single-incident exception. *Id.* at 131. The panel rejected the argument and held plaintiffs failed to allege any failure to train constituted deliberate indifference. *Henderson* is instructive in showing that *some* training is fatal to proving deliberate indifference, which usually requires a similar pattern of constitutional violations, under a single incident exception claim. *Henderson,* 51 F.4th at 131-32.

**F.    There is no evidence the City's was a moving force that directly caused a deprivation of Aviles' rights.**

40.    Officer Saldivar could not have reasonably believed the City *could* authorize Saldivar to use unlawful excessive force, knowing that every police shooting is investigated by criminal investigators from the Pasadena police department, in conjunction with investigators and assistant district attorneys employed by the Harris County District Attorney's Office, and Texas Grand Juries. *See Liggins*, 52 F.4th at 955-57; *James v. Harris County*, 577 F.3d 612, 618-19 (5th Cir. 2009).

41.    The City has no control over the machinery of the State of Texas or Harris County regarding criminal prosecutions. Moreover, two of the Detectives who investigated the Schenk shooting reported to prosecutorial authorities their suspicions that Officer Saldivar had used excessive force. With the knowledge that Pasadena Detectives expressed opinions Officer Saldivar had used excessive force in the Schenk shooting, and that the Pasadena police department had assigned Detectives who would reach such opinions to investigate the legality of Officer Saldivar's Schenk shooting, Officer Saldivar could not have reasonably relied on any City custom, practice, or lack thereof to protect him if he shot another person without legal justification. There is no evidence the City's custom or lack thereof was moving force that directly caused Officer Saldivar to use excessive force against Aviles.

18

## II.   There is no evidence the City has a governmental custom or practice of protecting officers who use excessive force.

### A.   The activities Plaintiff's allegation is premised on are not nefarious.

42.    The City has no governmental custom of protecting officers involved in shootings. The City does not provide officers with legal representation at the scene or in the aftermath of shootings. Officers are members of police associations and a union which typically provide legal representation to officers after police shootings. The City cannot deny officers access to legal counsel provided through such labor organizations.

43.    Moreover, because officers who shoot a person are subjected to criminal investigations, those officers have the same Constitutional rights as every other person. Officers have a Sixth Amendment right to counsel. Officers also have the Fifth Amendment right not to make any statement during a criminal investigation. Included in these rights, is an officer's absolute right to dictate conditions upon which the officer is willing to waive Constitutional rights. An officer, like any other individual subjected to a criminal investigation, has the right to decide when, if ever, the officer will make any statement. An accused officer can, likewise, refuse to waive Constitutional rights and participate in any interview, including a walk-through interview, if investigators record the officer's statements.

44.    Criminal investigators are only able to obtain information from an officer involved in a shooting if the officer provides information. So, competent detectives investigating any crime, including a police shooting, will prudently yield to terms a criminal suspect or his attorney require as a condition for the suspect's participation in the investigation. Detectives are performing investigations in competently, not nefariously. [Ex. 1, ¶¶ 5-7].

### B.    The City cannot protect officers who use excessive force.

45.    Furthermore, the City lacks any ability to protect officers who use excessive force. The summary judgment record does not reveal a municipality that refuses to investigate shootings by its officers, or a locale that prevents outside law enforcement authorities from investigating that city's shootings, or even a town that performs only cursory investigations of police shootings.

46.    To the contrary, City of Pasadena Detectives perform comprehensive investigations of every police shooting, the Pasadena police chief personally reviews recordings of every police shooting, Pasadena Detectives work in concert with Harris County prosecutorial and investigative authorities on police shootings, and assistant district attorneys present the Pasadena shootings to Harris County Grand juries that decide whether an involved officer will be prosecuted and potentially incarcerated if the officer uses excessive force.

47. The Detectives who performed the Schenk shooting criminal investigation and the internal affairs investigator who performed the administrative investigation challenged Officer Saldivar's report of the events.

48. The Detectives who performed the Aviles shooting produced investigative results that resulted in Officer Saldivar being indicted by a Grand Jury and subjected to a criminal prosecution, as well as leading Officer Saldivar to retire from the Pasadena police department when he did.

49. The record further evidences that Pasadena officers other than Officer Saldivar have been subjected to criminal prosecution and removal from service in the City's police department based on investigations Pasadena Detectives and internal affairs personnel have performed. [Ex. 1, ¶¶ 47-50; 18, ¶ 59]. This evidence does not support the allegation the City has, or even could have, a governmental custom or practice of protecting officers who use excessive force. *See Piotrowski*, 237 F.3d at 579.

50. Certainly, the record is barren of evidence of such a governmental custom. "In the 42 U.S.C.S. § 1983 context, a pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski* 237 F.3d at 579. Where prior incidents are used to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected,

21

accepted practice of city employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984). "It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case." *Peterson v. City of Fort Worth,* 588 F.3d 838, 842 (5th Cir. 2009) (internal citations omitted). "A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question." *Peterson ,* 588 F.3d at 842 (quoting *Estate of Davis*, 406 F.3d at 383). "A pattern also requires sufficiently numerous prior incidents, as opposed to "isolated instances."" *Peterson ,* 588 F.3d at 842 (internal citations omitted).

51.    There is no evidence any investigator has sought to protect an officer who has used excessive force, much less that such activities have occurred at sufficient numerosity to be a City custom.

## CONCLUSION AND PRAYER

52.    For these reasons, the City of Pasadena, Texas, moves the Court to grant the City's motion for summary judgment, dismiss all claims asserted against the City and enter judgment in favor of the City.

Respectfully submitted,

*/s/ Norman Ray Giles*
William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
S.D. Tex. Bar No. 8791
Norman Ray Giles
Texas Bar No. 24014084
S.D. Tex. Bar No. 26966

22

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
Attorneys for the City of Pasadena, Texas

CERTIFICATE OF WORD COUNT

I hereby certify this motion contains <u>4,983</u> words based upon the word-processor register. This word count does not include the case caption, table of contents, table of authorities, signature block or certificates.

/s/ *Norman Ray Giles*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on May 9, 2024.

Larry Taylor & Dimitri Dube
The Cochran Firm
1825 Market Center Boulevard
Suite 500
Dallas, Texas
Ltaylor@CochranTexas.com
Dd601@nyu.edu
*Attorneys for Plaintiff*

Steven D. Selbe
Gordon Rees Scully Mansukhani
TransWestern Tower
1900 West Loop South
Suite 1000

Houston, Texas 77027
sselbe@grsm.com
*Attorney for Officer Rigoberto Saldivar*

/s/ *Norman Ray Giles*