IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KRISTINE SCHENK, individually and as dependent administrator of, and on behalf of, STANLEY SCHENK individually, the ESTATE OF NATHAN ALEXANDER SCHENK, and NATHAN ALEXANDER'S heirs-at-law; and JENNIFER JACOPS-SCHENK, individually, <br><br>Plaintiffs, <br>v. <br><br>CITY OF PASADENA, TEXAS, and RIGOBERTO R. SALDIVAR <br><br>Defendants. | § § § § § § § § § § § § § § § § § § § Civil Action No. 4:20-cv-03799 <br><br> JURY DEMANDED |

CHIEF OF POLICE JOSHUA BRUEGGER'S DECLARATION

On this day personally appeared City of Pasadena, Texas, Chief of Police Joshua Bruegger, who being duly sworn on his oath, declared and stated as follows:

1. My name is Joshua Bruegger. I declare under penalty of perjury in accordance with the laws of the United States of America that the following statements are true and correct. I am over the age of twenty-one and in all other ways qualified and competent to make the statements contained within this declaration. These statements are made of my own personal knowledge because they reflect matters I personally observed or in

which I personally participated. I am authorized to make the statements contained herein. On the date of the occurrences which form the basis of this lawsuit, I was employed in the paid service of the City of Pasadena, Texas, as a police officer. I hold a peace officer license issued under the Texas Occupations Code through the Texas Commission on Law Enforcement (TCOLE). I have been a police officer in Texas for 23 years. I successfully completed all TCOLE peace officer training and licensing requirements.

2. The State of Texas has delegated to the Texas Commission on Law Enforcement (TCOLE), through Chapter 1701 of the Texas Occupations Code, the authority and responsibility throughout Texas to establish state-wide minimum police officer hiring, training, and licensing requirements. Texas has designated TCOLE as the agency in Texas responsible for establishing a statewide comprehensive education and training program for all peace officers so that officers are adequately trained, through curriculum approved by TCOLE, to perform law enforcement duties.

3. Section 1701.251 of the Texas Occupations Code provides that TCOLE "shall establish and maintain training programs for officers." Section 1701.253 requires that TCOLE "shall establish a statewide comprehensive education and training program on civil rights…" and which "covers the laws of [the state of Texas] and of the United States pertaining to peace officers" for all licensed law enforcement officers in Texas.

4. Occupations Code sections 1701.307 and 1701.351 provide that, in order to obtain and maintain a peace officer license in Texas, an officer must satisfactorily meet

all TCOLE training and licensing standards. Through TCOLE, all officers receive training regarding the Texas Penal Code and Code of Criminal Procedure. The basic TCOLE training course provides instruction on: the U.S. and Texas Constitutions and the Criminal Justice System; the Code of Criminal Procedure; Arrest, Search and Seizure; the Texas Penal Code; Use of Force-Law and Concepts; Mechanics of Arrest; and Criminal Investigation. This training all officers receive through TCOLE teaches officers they may not use force that is excessive to the need when making an arrest.

5. In addition to police academy training, all Pasadena officers undergo 40 hours of in-service police training every two years to maintain their TCOLE peace officer licenses. Based on my training provided by sources outside the Pasadena Police Department and my experience interacting with other heads of law enforcement agencies throughout Texas, I have learned that training TCOLE adequately prepares officers to reasonably perform the discretionary police duties entrusted to them.

6. Section 1701.352(d) of the Texas Occupations Code further requires that, within 24 months of appointment as a supervisor, all law enforcement officer supervisors receive training regarding supervising officers.

7. My training also includes study of appellate decisions issued by the Court of Appeals of the Fifth Circuit which show that TCOLE training has consistently been deemed constitutionally sound. It is my understanding that compliance with TCOLE police licensing and training standards not only satisfies the minimum standards required under the Constitution, but exceeds constitutional requisites. All Pasadena

officers, including Officer Rigoberto Saldivar, are required as a condition of employment to comply with all TCOLE licensing and training standards. I have never heard that complying with TCOLE standards is unconstitutional, and I have no reason to believe that is the case. I rely on the expertise of TCOLE in performing its function of providing well-qualified law enforcement officers. I have no reason to believe the training provided to Pasadena officers, which in large part is the same training provided to officers throughout Texas, is constitutionally deficient.

8.  After Pasadena officers successfully complete training through a TCOLE certified police academy and pass the Texas state peace officer licensing examination, Pasadena officers go through a program of on-the-job training called the field training officer (FTO) program. The Pasadena police FTO program utilizes a method of instruction approved by TCOLE. In this segment of supplemental instruction, new officers are extensively supervised by experienced officers who have been specially trained through TCOLE to administer the FTO program. The FTO program consists of teaching components and testing components which require new officers to demonstrate their competence before the new officers are permitted to perform their duties without direct supervision. Trainees and field training officers are supervised by field training supervisors to assure accountability and compliance with TCOLE training standards. I have no reason to believe the Pasadena police FTO program, operated in accordance with TCOLE approved standards, is constitutionally deficient.

9.  The guidance available to appropriately direct Pasadena officers does not end

there. Criminal laws prohibit officers, including Officer Saldivar, from using excessive force. Texas Penal Code sections 9.51-9.54 govern law enforcement use of force. Any officer who uses force that violates those penal laws is subject to criminal prosecution by the State of Texas. Therefore, no Pasadena officer, including Officer Saldivar, could rationally believe the City or I would, or even could, authorize an officer to use excessive for that violates the Fourth Amendment. I have no reason to believe these laws are not effective in enforcing compliance with the legal constraints on police use of force.

10. The State of Texas has also created, through Chapter 143 of the Texas Local Government Code, police civil service laws that govern the promotion and discipline of police officers in cities like Pasadena that have adopted state civil service. These civil service laws provide the standards under which officers must be selected, promoted, and disciplined. These laws provide officers a conditional protected property right in police employment, provided the officer does not commit misconduct. The civil service laws include due process rights for officers and dictate promotional and disciplinary standards of officers throughout Texas, including in Pasadena.

11. The civil service system provides for various levels of supervisory personnel monitoring the actions of subordinate officers. Under civil service law, promotions are earned through a competitive civil service process, and supervisors who fail to perform their duties competently are subject to disciplinary actions, including demotion, suspension, and discharge. I have attached, to this declaration summary judgment exhibit 13, which contains a copy of Pasadena Charter, Ordinances, and civil service

provisions that provide further details regarding civil service. I have no reason to believe the Texas police civil service system is constitutionally deficient.

12. Additionally, the Pasadena Charter requires each Pasadena police officer to swear and subscribe to an Oath of Office, under oath, that the officer will faithfully execute the duties of the office of Pasadena police officer and to the best of his ability preserve, protect, and defend the Constitution and laws of the United States and the State of Texas. I lack authority to excuse Officer Saldivar from this oath City policy mandates.

13. I, and all other Pasadena police officers, must also abide by the provisions of the Pasadena City Charter and Code of Ordinances. I have no reason to believe the Pasadena Charter, Ordinances, or civil service system is constitutionally deficient.

14. All Pasadena officers must also comply with Pasadena Police Department regulations, which include provisions that apply to the circumstances of this case. The Pasadena Police Department's *Use of Force* policy declares:

> It is the policy of the Pasadena Police Department that officers use only the force that is reasonably necessary to bring an incident under control, while protecting the life of the officer and others. The use of force must be objectively reasonable. The officer must only use that force which a reasonably prudent officer would use under the same or similar circumstances.

15. The Police Department *Use of Force* policy contains a reporting requirement when force is used that facilitates supervisory review of force encounters. I have attached, to

my declaration, summary judgment exhibit 16, which is a copy of the Pasadena Police Department *Use of Force* policy. I have no reason to believe this police department regulation is constitutionally deficient.

16. To further instruct officers and enforce compliance with all of these sources of training, supervision, and direction, Pasadena officers are supervised through several supervisory ranks within the police department. Supervisors must fulfill Texas civil service, and TCOLE standards and earn promotions through a competitive process that requires experience, testing of competency on legal and professional knowledge, and demonstration of leadership skills. I have no reason to believe the rank supervision program is constitutionally deficient.

17. Furthermore, the Pasadena Police Department maintains an office of professional standards which investigates allegations or/and suspicions of police misconduct, as well as the circumstances of custodial deaths. The occurrence which forms the basis of this lawsuit provides an example of such an investigation. Schenk's death has been thoroughly investigated. Investigators employed by the Pasadena police department, investigators employed by the Harris County District Attorney's Office, and investigators employed by the Harris County Medical Examiner's Office all performed investigations of the circumstances of Schenk's death. In his analysis of the facts during this litigation, expert Albert Rodriguez specifically discussed these investigations and findings therefrom, including those from District Attorney Investigator Dennis Field and Harris County Institute of Forensic Sciences, Forensic

Chemist Kristina May. Additionally, the Harris County Medical Examiner and prosecutors employed by the Harris County District Attorney's Office participated in the investigation. Thereafter, the investigations were presented to a Harris County Grand Jury and the Grand Jury investigated the events. Those investigations did not lead to any charge being filed against Officer Saldivar based upon the occurrences.

18. An investigator from the Pasadena Police Department office of professional standards monitored the investigations identified in the preceding paragraph, included those investigations as part of the Pasadena Police Department's further administrative investigation of whether Officer Saldivar violated any police department regulation. The Pasadena professional standards investigator also performed additional investigative steps in the administrative investigation and presented the facts to several police department supervisors and administrators, including me. I have reviewed, and am familiar with, the investigations performed of the occurrences which form the basis of this lawsuit. In my depositions for this litigation, I answered specific questions regarding my knowledge of the relevant events. Based upon my knowledge of the facts, I see no basis for concluding Officer Saldivar used force that was excessive to the need.

19. Officers are trained, through TCOLE, they must apply force proportional to the need for force. This principle is embodied in the Pasadena Police Department use of force regulation and training regarding application of that regulation. The proportionality principle serves as a general guide for an officer when deciding whether a force option may appropriately be used in a particular situation. The proportionality

4841-0719-7695.2
Chief Bruegger's Declaration
Defendants' Summary Judgment Exhibit 12, Page 8

EXHIBIT 12

principle provides for consideration of officer and suspect factors and special circumstances that could potentially influence an appropriate method and level of reasonable force based on the totality of the situation. Application of such proportionality provides reasonably measured responses to a criminal suspect's noncompliance with police commands, efforts to evade arrest, and forceful resistance to arrest. The facts in this case show a reasonable application of the proportionality principle taught through TCOLE instruction. The force Officer Saldivar used to protect himself and arrest Schenk was necessary to react to Schenk's actions. Officer Saldivar adjusted the force he used based on the ineffectiveness of other tactics he had tried to apply that had proven ineffective.

20. Officers are trained, through TCOLE approved instruction, that a Taser is an appropriate tool for use to apprehend a fleeing suspect like Schenk. Schenk did not submit to reasonable detention in response to Officer Saldivar's "command presence," which is the general authority of a police officer exhibiting the symbols of his office while performing law enforcement duties like enforcing traffic and penal laws. Schenk did not submit to reasonable detention despite Officer Saldivar yelling several commands to Schenk to stop his flight. Instead, Schenk continued to commit more crimes.

21. It is obvious, from not only Officer Saldivar's reports but also the recordings, that Schenk and Officer Saldivar were in an extended, fierce hand-to-hand battle. That type of physical exertion expends energy very rapidly and seconds of such activity bring

rapid fatigue. Officers are taught that they are subjected to great risk of harm if a resisting suspect overpowers an officer. The officer is unable to defend himself from further physical attack or from being injured with a weapon taken from an officer. Officer Saldivar reported he feared Schenk may have obtained a knife, but even if Schenk had not obtained a knife, Officer Saldivar was nonetheless still at great risk of being physically overpowered and possibly disarmed by Schenk, This placed Officer Saldivar in a quandary, wherein Officer Saldivar had little time to create a different protection strategy and few options to protect himself from serious bodily injury or death. As training expert Captain Rodriguez explained in his professional reports, officers are trained through TCOLE that when an officer's life is in danger, lethal force is an appropriate defensive action to resort to. In this predicament Schenk forced Officer Saldivar into, it was reasonable for Officer Saldivar to defend himself from mortal danger by shooting Schenk.

22.     Due to this litigation, law enforcement officer training expert Captain Rodriguez performed a separate professional review and study of Officer Saldivar's actions and found that Officer Saldivar's actions were justified and appropriate. Before his retirement, this expert was the commander of the Texas Department of Public Safety law enforcement training academy and Commander Rodriguez has trained many officers, including Texas Rangers. I believe Captain Rodriguez is imminently qualified to objectively evaluate the propriety of Officer Saldivar's actions. Commander Rodriguez found Officer Saldivar's actions justified and appropriate. I don't understand

how I could be faulted for reaching the same conclusion, as Captain Rodriguez, regarding the propriety of Officer Saldivar's actions.

23. But regardless of whether the facts show that Officer Saldivar used excessive force, all of the information I have discussed thus far plainly show that Pasadena's police officers are well-aware that violation of law, City policy, and/or a Pasadena Police Department regulation subjects an offending officer to disciplinary action, including suspension, demotion or termination in appropriate circumstances, as well as possible criminal charges. I have no reason to believe Pasadena has any constitutionally deficient policy. Certainly, I have not authorized or permitted any City policy that I thought was constitutionally suspect to continue. Likewise, I have no reason to believe the training or supervision of any Pasadena Officer, including Officer Saldivar, was constitutionally deficient. Furthermore, I have not seen any information which shows that any City policy caused Officer Saldivar to use the force he used against Schenk.

24. Instead, the information of which I am aware demonstrates that Officer Saldivar made individual discretionary decisions regarding the type and amount of force that he believed was necessary under the circumstances. I believe Officer Saldivar's decisions and actions were reasonable, but those specific decisions and actions were not required under any City policy. That a particular use of force does not violate the City's policy, does not mean the City's policy actually caused the force used. I am not aware of any information which show s that Officer Saldivar used any force based on the rationale that a City policy required that specific force.

25. Furthermore, I am not persuaded the mere filing of lawsuits is any evidence of police misconduct. It has been my experience over the years, that many lawsuits filed are entirely baseless and others are imply premised on mere disagreement with discretionary actions of officers who were forced to make very difficult judgments with life and death consequences, without the benefit of information criticisms are based on, with little time to consider alternative actions. I am not aware of any judgment being entered against the City of Pasadena based upon any police action. Instead, I have seen many dismissal orders and judgments entered in favor of the city, stemming from suits claiming police misconduct. If any judgment had been entered against the City based on police misconduct, I am certain I would have known about it. Therefore, the judicial judgments of which I am aware do not indicate to me that the City, police department, or City police officers routinely violate the Constitution or laws of the United States.

26. Similarly, to ensure accountability for police action, the police department openly accepts complaints from anyone about claimed police action. But a mere complaint, like a lawsuit, does not necessarily evidence actual police misconduct. At my direction, the police department investigated complaints of misconduct to determine whether any evidence showed police misconduct. The way the City of Pasadena and the Pasadena police department handled complaints of alleged police misconduct was consistent with the statutes the State of Texas enacted for such purposes through Chapter 614 of the Texas Government Code. The procedure provides for investigation of claims of misconduct to determine whether the allegations are substantiated. When an officer is

found to have violated the law, City policy, or a police department regulation I initiate appropriate action addressing the transgression. I do not tolerate police misconduct in the very few instances it occurs in Pasadena.

27. The records attached to my declaration are an authentic, true and correct copy of the original governmental record of the City of Pasadena. I am familiar with the manner in which these records are created and maintained by virtue of my duties and responsibilities as the City's Chief of Police. This records were made at or near the time noted on the record. It is the regular practice of the City of Pasadena for this type of record to be made by or from information transmitted by persons with knowledge of the matters set forth in the record. I know from my own personal experience in viewing such records that it is the regular practice of the City of Pasadena to make and keep these types of records in the course of regularly conducted governmental activity.

Executed in Harris County, State of Texas, on this 14th day of January, 2022.

_____
Declarant Chief of Police Joshua Bruegger