# PASADENA POLICE DEPARTMENT
### Inter-Office Correspondence



**To:**  J. A. Bruegger, Chief of Police                    **Date:** May 10, 2021

**From:** M. Reyes, Detective

**Subject:** IAD Control Number 1331

### SUPPLEMENT REPORT

On May 6, 2021, I received a Data Stick Pro USB containing Hermann Memorial medical records for patient Randy Gutierrez Aviles from the medical treatment he received on January 12, 2021. The PDF document is six-hundred and thirty four (634) pages.

According to the medical records, Aviles was treated for the following injuries:

*There are comminuted fractures involving the distal thirds of the shafts of both the left radius and ulna. There is approximately 1-2 shaft widths volar displacement of the distal fracture fragments. There is fracture overriding approximately 2 cm involving the ulnar fracture. Metallic bullet is noted within the volar soft tissues of the distal 3rd of the forearm. There is moderate diffuse soft tissue swelling surrounding the fracture sites with soft tissue irregularity consistent with a laceration/open injury.*

The Data Stick Pro USB is attached to this binder.

End of Report

Detective M. Reyes

EXHIBIT 19

# PASADENA POLICE DEPARTMENT
### Inter-Office Correspondence



**To:**  J. A. Bruegger, Chief of Police            **Date:** April 29, 2021

**From:** M. Reyes, Detective, Public Integrity Unit

**Subject:** IAD Control Number 1331

## SUMMARY OF COMPLAINT

On January 12, 2021, Officer Saldivar on viewed a traffic offense at the intersection of Red Bluff Road and Spencer Highway. Officer Saldivar conducted a traffic stop in the 7000 block of Lance Avenue. Officer Saldivar positioned his marked patrol unit directly behind the traffic violator's vehicle. The driver, later identified as Randy Aviles exited his vehicle with his empty hands up and was ordered by Officer Saldivar back into his vehicle. While Officer Saldivar was waiting on additional units to arrive, Aviles failed to follow commands. Officer Saldivar approached Aviles' vehicle and feared for his safety. As a result, Officer Saldivar discharged his firearm ten (10) times at Aviles as he fled in his vehicle. After a brief pursuit, Aviles was taken into custody at 7655 Spencer Highway where it was discovered that Aviles had been shot one time to the forearm of his left arm.

## ALLEGATION

Officer-Involved Shooting

## OFFICERS INVOLVED

Rigoberto Saldivar
Employee #5750
Night Shift-Patrol

## COMPLAINANT

Chief of Police J. Bruegger
Pasadena Police Department

EXHIBIT 19

## INTERNAL AFFAIRS INVESTIGATION

On January 12, 2021 at approximately 11:00 pm, Internal Affairs Sgt. M. Norman was informed by police dispatch of an officer involved shooting at the 7000 block of Lance Avenue. Preliminary information was a suspect was shot during a traffic stop in the 7000 block of Lance Avenue and after a brief pursuit; the suspect was taken into custody at the 7600 block of Spencer Highway.

Sgt. Norman arrived at the 7000 block of Lance Avenue at approximately 11:58 P.M. and met with Detective Sergeant Skripka who was already on scene. Sgt. Norman was advised the suspect was no longer at the location and was transported to Memorial Hermann Hospital by Acadian Medics #965. Sgt. Norman then spoke with Night Shift Patrol Sgt. Johnson, who informed him that the officer involved was Pasadena night shift police Officer Rigoberto Saldivar. Officer Saldivar was at the secondary location located at the 7600 block of Spencer Highway. The suspect was later identified as Randy Gutierrez Aviles (w/m 09/25/85).

Det. Mata spoke with Sgt. Norman at the secondary scene (7600 block of Spencer Highway). Det. Mata stated Officer Saldivar was attempting to conduct a traffic stop near Red Bluff Road and Spencer Highway when Officer Saldivar broadcasted over the police radio that he "had one refusing to stop." A short time later, Officer Saldivar broadcasted over the police radio shots were fired and the suspect was fleeing again in the vehicle. After a brief chase, the suspect was pursued to the O'Reilly Auto Parts located at 7655 Spencer Highway, where officers subsequently apprehended the suspect. Det. Mata advised both scenes (7000 Lance Avenue and 7655 Spencer Highway) were secure by Officers for the impending investigation. Sgt. Norman was also informed the incident was captured on Officer Saldivar's body worn camera as well as the In-Car camera system.

Officer I. Mascorro was assigned the original report (PPD 2021-00587) and Det. S. Mata was the primary case investigator for the Criminal Investigation Division. Also on scene was Crime Scene Investigators Randles, Coppedge, and S. Dudley, who was to process and collect all relevant evidence as well as recover any ballistic evidence to include collecting and catalog Officer Saldivar's weapon.

The Harris County District Attorney's Office Shoot Team; District Attorney Investigator Walter Redman and Assistant District Attorney Jules Johnson. District Attorney Investigator James Wilson would be responding to the scene of the 7000 block of Lance Avenue.

### <u>Officer Saldivar's Weapons Charting</u>

Det. Mata instructed Officer Saldivar to meet with Crime Scene Unit Det. S. Dudley in the Mobile Crime Scene Command Unit in order to catalog his weapon. Present during the charting of the weapon were ADA Investigator W. Redman, Attorney G. Cagle, Officer Saldivar, Internal Affairs Sgt. M. Norman and Det. Mata. In charting the weapon, Officer Saldivar's duty weapon was a Glock, model 19, 9mm pistol bearing serial number TBV-181. His duty weapon had a rail mounted Valkyrie OLIGHT bearing serial number J12207059. One (1) live 9mm Speer brand round was in the chamber of the weapon. Officer Saldivar utilized a 20 round magazine in the magazine well of his firearm.

EXHIBIT 19

Ten (10) live 9mm Speer brand rounds were remaining in this magazine. The second magazine charted was from Officer Saldivar's duty belt magazine holder, closest to his midline. The magazine was a Glock brand, 17 round magazine loaded with sixteen (16) live rounds. The third magazine charted was from Officer Saldivar's duty belt magazine holder, furthest from his midline. The magazine was a Glock brand, 17 round magazine loaded with sixteen (16) live rounds. Upon completion, the cataloging revealed Officer Saldivar had discharged ten (10) rounds. C.S.U. Detective S. Dudley recorded the charting of Saldivar's weapon and video (DJI_0051.MP4) is attached to this binder.

### Non-Recorded "Walk Through"

Officer Saldivar was afforded the opportunity to review his In-Car camera video and body worn camera video along with his attorney (G. Cagle.) Next, a non-video/audio recorded walk through with Officer Saldivar pertaining to his account of the shooting was conducted at 7000 Lance Avenue. Present during the walk through were ADA J. Johnson, ADA Investigator W. Redman, ADA Investigator J. Wilson, Sgt. Norman and Skripka, Detective Sinitiere, Attorney G. Cagle and Det. Mata. According to Sgt. Norman, the walk through was consistent with Officer Saldivar's later submitted affidavit statement.

Officer Saldivar later submitted a Discharge of Firearm report and Use of Force report in accordance with the Pasadena Police Department Rules. Both forms are consistent with Officer Saldivar's walk-through and written affidavit, which are attached to this binder.

On January 13, 2021, Officer Saldivar reported to the Internal Affairs Office with Attorney G. Cagle. Officer Saldivar was provided with a notice of the investigation and a copy of the Record of Complaint. Officer Saldivar signed a Record of Receipt indicating that he received the documents. Chief J. Bruegger also provided Officer Saldivar a notification of Administrative Leave with pay. All documents are included in this binder.

On January 13, 2021, I received Officer Saldivar's Pasadena Police Department qualification scoresheet from Officer Huffman. It should be noted Officer Saldivar PASSED, on June 6, 2020, with a Glock Model 19 (9mm.) Officer Saldivar was later contacted and he informed me the Glock Model 19 from the officer involved shooting was the same weapon from the qualification. A copy of the scoresheet is included in this binder.

Sgt. Norman completed an Inter-Officer correspondence informing he reviewed this investigation and confirmed the accuracy in this report. The IOC is included in this binder.

### Officer Saldivar's Written Statement

On January 21, 2021, Officer Saldivar reported to the Internal Affairs Office with Attorney G. Cagle. Officer Saldivar provide a written statement under Garrity with the understanding that he may be contacted at a later date for follow-up questioning if necessary. Officer Saldivar's signed affidavit statement, without corrections or changes, is included in this binder

EXHIBIT 19

*My name is Rigoberto R. Saldivar and I am a peace officer employed with the Pasadena Police Department and have been so employed for twenty-one years.*

*On January 12, 2021, I was assigned to Night Shift Patrol working from 10:00 p.m. to 6:00 a.m. At approximately 10:27 p.m., I was driving to the police station to pick up a subpoena from the front desk officer. I was driving northbound on the 5500 block of Red Bluff Rd. in the #2 lane of traffic. I stopped at a red light at the intersection of Red Bluff Rd. and Spencer. A moment later all the northbound lights turned green including the westbound turn lane. I then entered the intersection and immediately observed a white four door vehicle driving at a high rate of speed southbound on 5400 block of Red Bluff Rd. #1 lane of traffic. The white vehicle swerved into the eastbound turn only lane and by passed another vehicle stopped at the red light waiting in the #1 lane. The white vehicle disregarded the red light driving southbound towards two vehicles attempting to turn westbound from Red Bluff Rd. onto Spencer Hwy. The white vehicle continued southbound and swerved back into the #1 lane after clearing the intersection.*

*I quickly activated my emergency lights and siren and began pursuing the white vehicle southbound on the 5500 block of Red Bluff Rd. The white vehicle disregarded my emergency lights and siren and increased speed in an attempt to evade arrest at which time I notified channel one of the pursuit. The suspect then turned eastbound on the 6900 block of Lance Ave. I was able to catch up to the white vehicle with my marked police unit at which time the white vehicle came to an abrupt stop at 7000 block of Lance Ave. The driver, who was later identified as Randy Gutierrez Aviles w/m 09/25/85, immediately exited the driver's side door to the white vehicle with his hands up without being instructed to do so.*

*Due to my experience in law enforcement, I have found that normal and prudent citizens do not exit their vehicles during traffic stops unless instructed to do so. During similar incidents where this happens the driver is attempting to hide or conceal contraband, preparing to evade arrest on foot, or attempting to harm the officer.*

*After seeing Mr. Avilas come to an abrupt stop and exit his vehicle, I immediately drew my service weapon pointing it at Mr. Avilas while taking cover behind my driver's side door. I then yelled commands to Mr. Avilas not to move. Mr. Avilas originally faced my patrol unit but after seeing my service weapon he turned and faced away. He appeared to follow my command at which time I instructed Mr. Avilas to get back into his vehicle which he complied with. I then provided Channel One with the registration to his vehicle (TX-NDJ7543) and of our location.*

*I continued to give Mr. Avilas commands to place both his hands outside his window where I could see them. Mr. Avilas originally followed my commands at which time I began waiting for my back units to arrive. Mr. Avilas slowly began being defiant placing his hands inside the vehicle. I instructed Mr. Avilas several times to keep his hands up believing if I could keep sight of his hands he would not be able to grab a weapon. At this point I had moved away from my patrol vehicle in an attempt to maintain a visual on Mr. Avilas while waiting for additional units. Mr. Avilas refused to follow my commands at which time I warned Mr. Avilas I would shoot him if he did not keep his*

EXHIBIT 19

*hands up. Mr. Avilas continued to move his hands all the way inside his vehicle as I continued to yell commands for him to keep his hands up. Mr. Avilas then dropped both his hands turning his body towards the passenger seat and reaching his right hand in the area of the center console and passenger seat area where weapons are commonly stored.*

*Fearing Mr. Avilas was reaching for a deadly weapon putting me in imminent fear for my life, I began discharging my duty weapon at Mr. Avilas. I do not know exactly how many rounds I fired. Mr. Avilas then fled the scene driving eastbound on 7000 Lance Ave. at a high rate of speed. Channel One was notified that shots had been fired and I was in pursuit of Mr. Avilas vehicle. Mr. Avilas drove eastbound on Lance Ave. and northbound on Janice. Avilas continued westbound on Strague Ave. and northbound on Trent Rd. He then turned eastbound on Spencer Hwy. passing Kyle Chapman and then Center St. Mr. Avilas then turned northbound into the O'Reilly's Auto Parts Store parking lot located at 7665 Spencer Hwy. Mr. Avilas drove north through the parking lot and jumped the curb into a large open field north of the store. Mr. Avilas drove north through the field and crashed his vehicle into a fence where he abandoned his vehicle and fled on foot. I followed Mr. Avilas in my vehicle as he ran northbound through the field near a radio tower. Mr. Avilas ran around the radio tower and began running southbound towards Spencer. Mr. Avilas ignored my commands to stop and continued running southbound through the field as I pursued him on foot. Mr. Avilas was tackled and taken into custody with assistance from other officers. I attempted to administer first aid to Mr. Avilas but was unable too due to Mr. Avilas kicking and twisting his body. I returned to my patrol unit while other officers assisted EMS with Mr. Avilas*
.
*I was photographed and provided my weapon (Glock 19 9mm Caliber) and magazines to Pasadena crime scene investigators.*

**END OF STATEMENT**

On April 7, 2021, Det. Mata informed me the criminal investigation was completed and sent to the Harris County District Attorney's Office for review.

**EXHIBIT 19**

## Scenes Summary

### Officer Involved Shooting Overview



 Traffic Offense Location (Red Bluff Road/Spencer Highway)

Officer Involved Shooting Location (7000 Lance Avenue)

Suspect's Arrest Location (7655 Spencer Highway)

Route Traveled by Officer Saldivar

The above photo was retrieved from available satellite photography via AvailWeb and does not depict the location as it was at the time or date of the incident. This photo is for reference purposes only. The provided location are approximation, therefore refer to the scale diagram for complete details.

Pasadena 3272

EXHIBIT 19

**7000 Lance Avenue**



The above right photo was retrieved from available satellite photography via AvailWeb and does not depict the location as it was at the time or date of the incident. The above left photo was retrieved from Officer Saldivar's In Car camera video at the location of the traffic stop (7000 Lance Avenue.) These photos are for reference purposes only. The provided location are approximation, therefore refer to the scale diagram for complete details.

The following is from Officer Paz's supplement report describing the scene from the 7000 block of Lance Avenue. The 7000 block of Lance Avenue is a residential road within the city limits of Pasadena, Harris County, Texas. The roadway runs generally east and west, with one lane designated for each direction of travel. On the south side of the roadway is a business that extends east on Lance Avenue from the intersection of 5700 Red Bluff Rd. The business is Lawco Liquidation and carries the address of 5701 Red Bluff Rd. The front door to the business is on the 7000 block of Lance Avenue and the front door faces north. Approximately twenty (20) feet north of the front door of the business and five (5) feet east, was three (3) bullet casings, silver in color. Approximately seven (7) feet east of the three casings, are additional casing, also silver in color. Approximately ten (10) feet north of that location within a five (5) foot diameter there was an additional five (5) casings, four (4)

Pasadena 3273

EXHIBIT 19

silver in color and one (1) brass colored. There were two additional silver casings, one (1) approximately five (5) feet slightly northwest and one (1) five (5) feet west. The total amount of casings observed were eleven (11.) A black semi-auto style Taurus Handgun was found in the grass of the southwest corner of 5701 Red Bluff Rd. The handgun was approximately thirty-five (35) feet west and one (1) foot south of the intersection.

## 7600 Spencer Highway



A- Suspect Vehicle Location
B- Arrest Location

The above photo was retrieved from available satellite photography via Google Earth and does not depict the location as it was at the time or date of the incident. This photo is for reference purposes only. The provided location are approximation, therefore refer to the scale diagram for complete details.

The following is from Det. Mata's supplement report describing the scene from the 7600 block of Spencer Highway. 7600 Spencer Highway is a public roadway located within the city limits of

EXHIBIT 19

Pasadena, Harris County, Texas. The roadway generally runs east and west, with three lanes designated for each direction of travel. In between the six lanes, is the location of a single marked turning lane. 7655 Spencer Highway is the location of the O`Reilly`s auto parts business. The business sits on the north side of the roadway with the front entrance doors facing south. Two parking lots for the business are located just south and west. The parking lots have double exit/entrance driveways along the south side of the parking lot. Positioned north from the business at approximately 50 ft., a high chain link fence measuring approximately 160 feet long and 6 feet high is located in the middle of an open field. The chain link fence has a security barbed wire line, which measures approximately 1 foot high along the top of the fence.

According to Officer Mascorro's original report, a white 2013 Volkswagen Jetta bearing Texas registration NDJ-7543 was stopped with the front facing north. The white Volkswagen Jetta`s front end appeared to have collided with the previously mentioned 160 foot fence. The Volkswagen Jetta`s engine was turned on with the transmission in park. The front and rear driver's side windows were in the down position. The driver side facing quarter glass window was fractured with a hole in the middle consistent with a projectile passing through. The vehicle's rear window was completely shattered. A splatter of apparent bloodstain was observed on the rear driver's side door and on the "C" pillar of the rear driver side quarter panel. The crime scene digital images are included in this binder.

## Mobile Audio/Visual Evidence

The entire traffic offense and shooting incident was recorded on Avail Web. Officer Saldivar had his Body Worn Camera and In-Car video activated during the traffic stop in accordance with policy.

## Officer Saldivar's In-Car Video

The Avail Web in-car camera footage (#1631) is date/time stamped January 12, 2021 at 10:26:03 P.M. The recording begins at 00:00 and ends at 19:42 in minutes; seconds format, independent of the actual time. The video is included in this binder.

The video begins (00:00) with Officer Saldivar stopped in his marked patrol unit in the number two (2) northbound lane at a red light on Bluff Road at Spencer Highway. The northbound and westbound turning lane traffic lights turn green, which prompted Officer Saldivar to proceed northbound on Red Bluff Road crossing Spencer Highway. The In-Car video shows a white sedan traveling southbound on Red Bluff Road at a high rate of speed approaching the Spencer Highway intersection. The white sedan quickly changes lane into the southbound left turn only lane and proceeds straight through the intersection, while the northbound and westbound traffic had a steady green light. Officer Saldivar observed the traffic offense and immediately activates his emergency overhead lights at the 00:30 minute mark and maneuvers a U-turn. The In-Car audio is now activated and the unit's AM/FM radio is heard playing in the background. Officer Saldivar completes U-turn to pursue the white sedan and according to the In-Car video; both southbound lanes of Red Bluff Road had a steady red light at the 00:33 minute mark. The left turn only lane had a flashing yellow light with a sign indicating left turns allowed, but must yield to oncoming traffic. Next, Officer

EXHIBIT 19

Saldivar begins to accelerate rapidly; the brake lights to the suspect's vehicle are visible at the 00:34 minute mark indicating the vehicle is slowing. The suspect's vehicle is seen making a left turn (eastbound) onto the 7000 block of Lance Avenue and coming to a complete stop at the 00:50 minute mark.

According to Det. Mata's supplement report, Officer Saldivar makes the left turn onto the 7000 block of Lance Avenue, the suspect's vehicle stops approximately 140 feet east of the intersection near the far northeast corner of the parking lot of 5701 Red Bluff Road. Officer Saldivar's unit stops, the In-Car video shows the vehicle's driver side door opening. A light skinned White or Hispanic male is seen exiting with both empty hands up at shoulder level facing north. Also seen on video is a small, shiny object falling out of the vehicle and bounce onto the pavement, which was later identified as a spent shell casing. The following are the time stamps and actions as observed on the video by this investigator.

00:56
Officer Saldivar is heard yelling: "Don't you fucking move, Don't you dare move, Get back in your car, Get back in your car now! Get back in your car."   Officer Saldivar's siren to his marked unit is still activated.

01:02
At this point in the video, the driver is seen following Officer Saldivar's commands and getting back into the vehicle. The driver's side door is completely open at this time.

01:09
Officer Saldivar is then heard on video informing dispatch of the license plate to the white sedan "NDJ-7543" as well as his location, "Lance and Red Bluff."

01:17
Officer Saldivar is heard yelling; "Don't you move get your hands where I can see them. Put your hands back; let me see both those hands. Put both those hands out the window, both of them, put both of them, do not move, like that, stay right there."

01:31
The driver is seen with both hands visibly up and following Officer Saldivar's commands.

01:42
The driver is seen lowering his right hand and Officer Saldivar is hear yelling "Do not, get that hand up. I will shoot you, keep your hands where I can see them." The driver slowly lowers his right.

01:46
Officer Saldivar is heard saying "put your hands, put your God damn hands up, put your hands up, put your hands up, put your damn hands up, don't you fucking move."

Pasadena 3276

EXHIBIT 19

01:50
While the aforementioned commands are being given, Officer Saldivar is seen entering the video with his duty weapon at eye level pointed at the driver.

01:51
The driver lowers his right hand and his hand is no longer visible.

01:52
An engagement of the vehicle's brake lights are observed as Officer Saldivar continues to approach the driver's side door of the suspect vehicle while continuing with commands.

01:53
The driver's left hand near the headliner inside the vehicle. The driver's left ear is visible with his head facing in the direction of Officer Saldivar. Officer Saldivar continues to approach the vehicle while yelling commands for the driver to put his hands up. Officer Saldivar is within approximately 5 feet of the vehicle. While Officer Saldivar is making the approach, the vehicle's brake lights are illuminated.

01:54
The vehicle begins to move forward slowly.

01:56
The vehicle then quickly accelerates causing the driver side door to begin to rapidly closes as Officer Saldivar discharges his firearm at the driver. Officer Saldivar's gun is pointed at the driver parallel with the ground. Officer Saldivar rapidly fires ten (10) rounds towards the vehicle as it accelerates away from Officer Saldivar increasing the distance between the two.

02:00
Officer Saldivar is returning to his vehicle and heard notifying dispatch "Shots fired, Shot fired, Shots fired."

02:06
Dispatched broadcast "assist the officer Red Bluff and Lance." Officer Saldivar begins to travel eastbound on Lance Avenue accelerating rapidly.

02:17
Officer Saldivar informed Dispatch "we're continuing eastbound Lance Street" as he disregards a stop sign on Trent Rd.

02:26
Officer Saldivar informed Dispatch "northbound on Janus."

02:41
Officer Saldivar informed Dispatch "going westbound towards Red Bluff standby." Officer Saldivar

EXHIBIT 19

was traveling westbound on Flagler Avenue, which was not relayed to Dispatch.

02:43
Officer Saldivar informed Dispatch "northbound on Trent."

02:56
Officer Saldivar slows as he approaches Spencer Highway and make a right eastbound turn onto Spencer Highway.

02:58
Officer Saldivar informs Dispatch "eastbound on Spencer."

03:12
Officer Saldivar informs Dispatch "crossing center street."

03:21
Officer Saldivar informs Dispatch "going towards O'Reilly's Auto."

03:29
Officer Saldivar informs Dispatch "northbound through the field."

03:31
The white sedan strikes at a chain link fence that runs east to west, north of the O'Reilly's business. The driver is seen running westbound along the chain link fence.

03:36
Officer Saldivar continues to pursue the suspect in between two fenced in areas traveling northbound.

03:38
Officer Saldivar informs Dispatch "on foot on foot he's running, we're on foot."

03:44
The suspect falls to the ground and Officer Saldivar pulls the patrol unit up to him and opens his unit's door while yelling "let me see your fucking hands, let me see your God damn hands, let me see your fucking hands, don't you fucking move, I'm going to shoot you motherfucker, don't you move, don't you fucking move, don't you, get on the fucking ground, get on the ground, get on the ground, right now, get on the ground, get on the ground." The suspect's empty hands are up and his left arm appears to have a compound fracture near the wrist.

03:59
The suspect is back on his feet and continues to disobey Officer Saldivar's commands to get on the ground. The suspect continue to walk southbound away from Officer Saldivar.

EXHIBIT 19

04:06
The suspect is seen disobeying commands and continues running southbound. Officer Saldivar is seen pursuing the suspect in his patrol unit and yelling, "Get on the God damn ground."

04:12
Officer Saldivar exits his patrol unit with his weapon drawn on the suspect and beings to chase the suspect southbound.

04:16
Officer Saldivar holsters his weapon and tackles the suspect.

04:26
Several marked patrol units with lights activated are seen arriving on scene and assist Officer Saldivar taking the suspect into custody.

04:58
Officer Saldivar returns to his unit and turns off his siren.

05:13
Officer Saldivar moves his marked unit near the arrest location of the suspect and is heard saying "dam it; I got blood all over me."

05:38
Officer Saldivar in seen in front of his marked unit using some type of white rag to clean his hands.

05:54
Officer Saldivar returns to his vehicle and is heard saying "dam it, I got blood all over."

05:59
An Officer is heard over the radio requesting a Wrap for the suspect.

06:54
Officer Saldivar is seen carrying an orange medical bag towards the suspect.

14:36
The suspect is seen being carried by several officers to a nearby waiting ambulance.

18:00
Officer Saldivar is heard repeating the vehicle's license plate number "NDJ-7543" to Officer K. Helgeson.

19:30
Officer Saldivar is seen speaking with Sgt. Sowers at the front of the marked unit.

EXHIBIT 19

19:38
Officer Saldivar then returns to his vehicle and the recording stops

End of In Car Video

## Officer Saldivar's Body Worn Camera Video

The Avail Web body worn camera footage is date/time stamped January 12, 2021 at 10:26:03 P.M. The recording begins at 00:00 and ends at 19:05 in minutes; seconds format, independent of the actual time. The video is included in this binder.

Officer Saldivar's body worn camera footage provides a different view; however, a majority of the incident is documented during the aforementioned In Car camera footage. Only pertinent information not covered or clearly visible during the documentation of the In Car camera footage is being listed. The following are the time stamps and actions as observed on the video by this investigator.

01:20
The driver lowers his right hand slightly and Officer Saldivar yells "Do not, pick that hand up." The driver is heard saying, "Okay Okay, I got you."

01:21
Officer Saldivar responds by saying "I will shoot you, keep your hands where I can see them."

01:24
The video shows the suspect moving his right hand from view back inside the vehicle, out of view.

01:25
Officer Saldivar then begins to approach the vehicle's driver side door while yelling commands.

01:29
Officer Saldivar is at an approximate 45-degree angle to the driver side open door yelling commands. The driver's left hand is seen up near the headliner of the vehicle and his right hand near the bottom right of the steering wheel as the vehicle begins to slowly roll forward.

EXHIBIT 19

**The following image is a still frame of Officer's Saldivar's body camera view at the 01:30 minute mark**.



01:30
The vehicle begins to move forward and just prior to the door closing, Officer Saldivar fires ten (10) rounds at the vehicle as the vehicle quickly accelerates away from Officer Saldivar.

01:37
Officer Saldivar returns to his vehicle and only the steering wheel and console is seen for the remainder of the pursuit.

03:22
Officer Saldivar is inside his vehicle with the window down yelling at Aviles "Let me see your fucking hands, let me see your god damn hands, let me see your fucking hands, don't you fucking move, I'm going to shoot you mother fucker, don't you move, don't you fucking move, drop your fucking, get on the god damn ground, get on the ground, get on the ground, get on the ground right now, get on the ground, get on the ground, get on the god damn ground, get on the god damn ground."

03:47
Officer Saldivar exits his patrol unit with his weapon drawn. The drive is seen fleeing southbound on foot.

03:53
Officer Saldivar is heard yelling, "Get on the God damn ground."

03:55
In Officer Saldivar's In Car camera, it appeared that he holstered his weapon prior to catching up with the driver. Officer Saldivar did not holster his weapon and tackled the driver with his weapon in his right hand.

03:59
Officer Saldivar is heard saying "Get on the ground, don't you fucking move, don't you God damn move. Give me your hand, give me your hand, give me your other hand. The video shows Officer Saldivar's weapon pressed against the middle of driver's back. The driver is heard repeatedly saying "No, no, help, my hand, my hand." As other Officers arrive, Officer Saldivar is heard saying, "Secure my weapon, secure my weapon."

4:35
Officer Saldivar runs back to his patrol unit and deactivates the siren.

05:01
Officer Saldivar informs Dispatch to start and ambulance.

06:35
Officer Saldivar takes a first aid kit to the Officers detaining the driver.

07:09
Officers searching the driver's body for gunshot wounds. The driver is heard saying, "Dude what the fuck dude." Officer Anderson tells the driver "Making sure you ain't shot no where." Covered later in the interview with the driver, he alleged that Officers were attempting to touch his penis and buttocks.

08:30
Officer Saldivar begins to cut the driver's sweatshirt to his left arm.

EXHIBIT 19

08:42
Officer Saldivar is heard saying, "Okay see what we got here, yeah it looks like, yeah okay, he has a broken arm lower arm. I don't know what it's from."

09:44
Officer Helgesen asked Officer Saldivar if he is good and Officer Saldivar is heard saying, "Yeah, I'm good. Aww dang it, that dude started reaching." Officer Helgesen is heard saying, "Don't."

10:11
Officer Saldivar provides responding officers with gloves and a mask for the driver.

10:46
Officer Saldivar is heard saying "Just gonna be a normal stop man, I got blood on me, let me clean up one more time." Officer Saldivar then cleans his hands, interior, exterior of his vehicle with cleaning solution. Officer Carter and Helgesen remain with Officer Saldivar and make phone calls to a Union Representative.

18:39
Officer Saldivar asks Sgt. Sowers if he can turn his camera's off. Sgt. Sowers is heard saying "yeah."

19:05
Officer Saldivar is heard saying, "Turning off cameras, per Sgt. Sowers at 10:45 P.M. contact completed."

End of Video

**Channel One Radio Traffic**

I obtained an audio copy of the dispatch "channel one" radio traffic pertaining to the pursuit and subsequent contact with Randy Aviles. The audio copy of the radio traffic was provided to me and later reviewed via departmental computer. I listened to the provided audio copy and transcribed by this investigator. The remaining portion of the audio recording that was not transcribed pertained to the emergency services and police personnel responding to the scene post contact with Randy Aviles. The following is the transcription as created by this investigator:

Dispatch-D
Officer Saldivar-S
Sgt. Sowers-J
Officer Anderson-A
Officer Badgett-B
Sgt. Sorrell-R

*S- I have one running southbound on Red Bluff*

EXHIBIT 19

*D- Clear*
*S- Lance?*
*D- Give me a plate*
*D- 3309*
*S- 02: Nora David John 7543 Nora David John 7543, He is stopped at Lance and Red Bluff*
*D- Clear, All Units hold your traffic on Channel 1, 2227*
*J-330: Monitoring*
*D-Clear 330 Monitoring*
*D-02 update*
**S- Shots Fired**
*D- Shots Fired 2228, All Units assist the officer Red Bluff and Lance*
*S-02 eastbound Lance Street*
*D-Eastbound Lance*
*S-Northbound on*
*S-Going westbound towards Red Bluff again, standby, Northbound on Trent*
*D-Eastbound on Trent*
*S-Eastbound Spencer*
*D-Eastbound Spencer*
*S-Passing Kyle Chapman*
*S-Passing Center Street*
*D-Passing Center*
*S-Okay we are going to the O'Reillys Auto*
*D-Clear pulling into the O-Reillys*
*S-Northbound through the field*
*S-On foot he's running, we're on foot*
*D-That's clear, on foot in the O'Reillys*
*D- They are running eastbound through the field*
*D-02 update*
*A-11: They are taking one into custody in between the church and the O'Reillys*
*D-Clear one in custody 2230*
*A-Slow everyone else down*
*D-All units slow your traffic*
*B-09 He is in custody*
*D-09 Clear, One in custody 2231*
*V-46: Show me out*
*R-333: To the units, do we need an ambulance?*
*S- 3303:Yes sir, start and ambulance*

The copy of the audio recovering is part of this case file for review and further details.

## Suspect Vehicle Information

The vehicle driven by Randy Aviles, 2013 white Volkswagen sedan, TX reg. NDJ7543, was verified via Records Division as not stolen and registered to Randy Aviles at 6304 Sexto Street, Brazoria, TX

EXHIBIT 19



77422. The vehicle was later towed from 7600 Spencer Highway by Eady's Wrecker Services to the Crime Scene Unit processing bay, located at 1201 Davis, where it was later examined by Officer Dudley of the Crime Scene Unit.

## Suspect's Injuries

Officer Shechter described Aviles' injuries in a supplement report. Officer Shechter stated Aviles was found to "have a gunshot wound to his left forearm; as well as, two possible broken bones in hi sleft arm." Officer Shechter and Officer Anderson followed the Acadian ambulance (Medic #965) to Memorial Herman Hospital, where he utilized hi body worn camera to photograph Aviles' injuries. Officer Schecter's supplement report and color images of Aviles' injuries are attached to this report. As of April 29, 2021, the medical records have not been received.

## 7106 Lance Street Home Security Camera footage

Sgt. Skripka returned to the original shooting scene to canvass the area for any witnesses or video evidence from home security cameras. Sgt. Skripka made contact with Patrick Wayne Flanagan (W/M 10/08/47) who indicated his residence's (7106 Lance) surveillance camera captured the suspect vehicle fleeing from Officer Saldivar after the shooting. Flanagan also recovered a projectile from the rear passenger door to his 2008 Chevrolet Silverado (Tx. Reg. GTM3508). Attached to this binder are the photos of the damage, recovered projectile, and home surveillance video.

The surveillance camera is mounted along the north side of home facing northeast along Lance Avenue. The video has a date/time stamp 2021/01/12 10:28:00 PM TUE on the top left corner of the video and "north east" on the bottom right corner. The recording begins at 00:00 and ends at 00:33 in minutes; seconds format, independent of the actual time.

00:00
The video has audio and of poor quality caused by the poor lighting. A siren is heard in the background.

00:01
A few (unknown number) gunshots are heard

00:05
Aviles' vehicle enters the video and traveling at a high rate of speed eastbound on Lance Avenue.

00:16
Officer Saldivar's marked patrol unit is seen entering the video pursuing Aviles with his lights and siren activated.

00:30
Officer Saldivar's marked unit makes the left turn on Janus Road.

Pasadena 3285

EXHIBIT 19

00:37
End of Video

## Officer Saldivar's Interview

On April 20, 2021, Officer Saldivar reported to the Internal Affairs office (1149 Ellsworth) for his scheduled interview with Attorney G. Cagle. Officer Saldivar was offered the opportunity to privately view his In Car video and his body worn camera footage. Officer Saldivar declined the offer and I provided Officer Saldivar with a copy of his statement. An audio/video recorded interview was then conducted with Officer Saldivar and a copy of the interview is included in this binder. Assisting in the interview was Sgt. Norman.

Officer Saldivar indicated in his statement "the white vehicle disregarded my emergency lights and siren and increased speed in an attempt to evade arrest at which time I notified channel one of the pursuit." Officer Saldivar's In Car camera was played on a tablet and Officer Saldivar was asked to stop the video when the incident occurred. Officer Saldivar paused the video at the 00:32 mark of the In Car camera footage. Officer Saldivar indicated as soon as he activated his emergency lights, the vehicle drove past him and accelerated. Officer Saldivar added that most normal people automatically brake and begin to pull over. Later in the interview, Officer Saldivar stated there was no way the driver did not see his marked patrol vehicle. Officer Saldivar added most people can see the LED police lights from their rear view and side view mirrors at great distance. Officer Saldivar was looking out the driver's side window at the vehicle and at traffic to maneuver a U-turn safely. It was at this point, Officer Saldivar observed the vehicle increase his speed. The In Car video captures the vehicle driving the opposite direction at a high rate of speed, but does not capture the vehicle increasing speed.

Officer Saldivar indicated the vehicle was traveling "by far" above the posted speed limit. I continued to play the video and stopped the video at the 00:34 minute mark to show the vehicle's brake lights illuminated. Officer Saldivar acknowledge that the white vehicle's brake lights were illuminated indicating slowing or stopping. Officer Saldivar believed the vehicle was only slowing to make the turn onto Lance Avenue and was not making an effort to pull over. Officer Saldivar initially agreed that the pursuit was terminated at the 00:50 minute mark, which was when the white vehicle came to a complete stop at 7000 Lance Avenue. I informed Officer Saldivar that the pursuit only lasted 20 seconds and he then indicated he did not consider a pursuit terminated until the driver is in custody. Officer Saldivar informed later in the interview that he would have presented the 20-second pursuit to the Harris County District Attorney's Office for consideration of an evading charge because he (Aviles) put other driver's lives at risk by running the red light.

I then asked Officer Saldivar about a statement he made to Officer Helgesen captured on his body worn camera. The following comment was made at the 10:46 mark; "Just gonna be a normal stop, man I got blood on me, let me clean up." Office Saldivar stated if the vehicle had stopped for disregarding the red light, it would have been a normal traffic stop. Officer Saldivar added after the vehicle failed to yield, it was no longer a normal traffic stop.

**EXHIBIT 19**

Officer Saldivar was then asked about the handgun that was discovered in the grass at the 7000 block of Lance Avenue. The found handgun is described later in this report. Officer Saldivar informed he did not see a gun and had no knowledge of the gun. Officer Saldivar found out about the gun "after it was all said and done." Officer Saldivar was also asked about the spent shell casing found at the scene that did not belong to his service weapon. Officer Saldivar stated that he did not see the spent shell casing fall out of the vehicle and had no knowledge of it origin.

Officer Saldivar stated he ordered the driver back into the vehicle because in his experience, drivers are attempting to conceal contraband, preparing to evade on foot, or planning to cause harm to the officer. The driver complied with the command to get back into the vehicle and Officer Saldivar then notified dispatch of the vehicle's registration.

Office Saldivar was asked why he failed to turn off the siren and if it could have prevented the driver from hearing him. Officer Saldivar informed he exited the unit quickly to order the driver back into the vehicle and he was unable to turn off the siren. The driver followed his command to get back into the vehicle and Officer Saldivar believed the siren did not interfere in the communication.

Officer Saldivar stated that at the 1:21 minute mark of the In Car video, the driver began to be defiant by placing his hands back into the vehicle out of his view. Officer Saldivar listed in his statement he moved away from his patrol vehicle. The driver initially had his hands up and in view outside the vehicle. The driver soon after moved his hands back inside the vehicle, still in the up position. Officer Saldivar stated he moved from cover away from his vehicle to a northern direction to maintain a view inside the vehicle and the driver's hands. At the 1:46 minute mark, Officer Saldivar stated the driver began to be defiant and he lost sight of the driver's hands. Officer Saldivar approached the vehicle in order to regain a visual of the driver's hands. Officer Saldivar added "the way I see it, if I can see your hands, I am still safe. The moment officers lose sight of a person's hands, that's when bad things happen. That's when people reach for guns, people reach for knives. That is when bad things happen to Police Officers." Officer Saldivar continued to add, "You've seen it time and time again on video and body cams." Officer Saldivar again later in the interview mentioned he has seen Officers shot after losing sight of someone's hands and he did not want that to happen to him.

Officer Saldivar was asked why he threatened to shoot the driver. Officer Saldivar stated he used "verbal judo" to let the driver know what would be the outcome if this happens. Officer Saldivar believed it was in policy that we state our intent before shooting. Officer Saldivar stated at that point, he felt he was approaching a deadly force situation because he feared the driver was reaching for a weapon. *The video shows Aviles complying with orders and responds to Officer Saldivar of his compliance "Okay Okay, I got you" prior to Officer Saldivar threatening to shoot him.* Officer Saldivar described the driver's behavior as defiant when he placed his hands back inside vehicle out of view. The driver had his hand up inside the vehicle and Officer Saldivar believed he was safe, but not one hundred percent safe. "The driver has easily access to a weapon." Officer Saldivar added, "Actions is faster than reaction."

Next, I played Officer Saldivar's body worn camera footage. According to Officer Saldivar's

Page 21 | 27

EXHIBIT 19

statement, "Mr. Avilas then dropped both hands turning his body towards the passenger seat and reaching his right hand in the area of the center console and passenger sear are where weapons are commonly stored." I asked Officer Saldivar to stop the footage at the point of the aforementioned incident. I stopped the footage after Officer Saldivar fired his weapon and Officer Saldivar stated it happened in a split second. I replayed the footage and Officer Saldivar stopped the video at the 1:30 minute mark. Officer Saldivar stated the driver's head is dipping and his hand is out of view. Officer Saldivar stated it occurred in a split second prior to him discharging his weapon. Officer Saldivar's statement listed "fearing Mr. Avilas was reaching for a deadly weapon putting me in imminent fear for my life, I began to discharge my duty weapon at Mr. Avilas." Officer Saldivar stated this occurred within a split second after Mr. Avilas' head dipped and he lost sight of his hand.

I then paused the footage at the 1:29 minute mark and the video shows Mr. Avila's left hand up near the headliner and his right hand near the bottom of the vehicle's steering wheel. The footage was then paused at the 1:30 minute mark and Officer Saldivar stated Mr. Avilas' right ear could be seen proving he was facing the passenger's side. Officer Saldivar stated that it all happened in a matter of a second. Officer Saldivar feared Avilas was reaching for a deadly weapon putting him in imminent fear for his life. Officer Saldivar stated he did not see a gun or any weapon prior to discharging his firearm.

After Officer Saldivar discharged his firearm, he was uncertain how may round he fired. Officer Saldivar was asked why he fired ten rounds at Avilas. Officer Saldivar stated in training Officers fire in sequence of three to five round or until the threat is stopped. Officer Saldivar stated he did not think and it was a complete reaction. He following his target until the threat was stopped. The interview was then concluded.

**Interview with Randy Aviles**

*On Thursday January 14, 2021, at approximately 0705 hours Detective M. Quintanilla and Detective S. Mata contacted with Randy Gutierrez Aviles at Memorial Hermann Hospital, 6411 Fannin Street in Houston, Texas 77030.*

*Aviles was read his Texas Statutory Warnings and later advised he understood everything that was being read to him. Aviles wished to waive his right to have his legal counsel present during the interview. He advised on the night of the incident, he recalls driving from his home in Brazoria, Texas. Aviles stated he was being followed by several cars from his home. He advised he stopped at a nearby Buc-ee's Gas Station and realized that he was being followed by a black male. Aviles believed he was being followed by this male and others from the store and into Pasadena, Texas. While he was in Pasadena, Texas he advised that his windshield started getting cracks in it and believed that he was being shot at. Aviles believed he was being set up by a group of males who were attempting to kill him.*

*Aviles advised he attempted to call 9-1-1. When he spoke with a dispatcher, he advised that he was confused. He advised he asked the male dispatcher, "Is this 9-1-1?" and that the dispatcher responded, "I don't know, is it?" He then continued to state that as he was on the phone, he was still*

*being followed by several cars. During the interview, Aviles did not mention if the 9-1-1 dispatcher was from Pasadena PD. Efforts were made to search for any 9-1-1 calls made by Aviles, but no results were located.*

*He did not advise if the dispatcher was going to send help, nor did he state what his disposition was with the call. Aviles later advised that he was stopped by a Pasadena Police Officer. During the traffic stop, Aviles advised he got out of his vehicle and began asking the officer for help. Aviles stated he then heard the officer yell out, "Get back in your car," following the officer's orders, he got back into his vehicle. Aviles then hears gunshots being fired and believed the officer was shooting towards him trying to kill him.*

*During the interview, Aviles advised there were doctors who worked for Memorial Hermann who were out at the scene as he was being tied up. Several times during the interview, Aviles became belligerent and advised that officers, while taking him into custody were attempting to grab his penis and buttocks and stated the officers had an axe and were trying to cut off his fingers.*

*He advised he drove off during the traffic stop because he was being shot at by the police officer. Aviles advised as he was being followed by the unknown suspects, he did not fire his pistol towards them. Aviles denied ever having a gun with him and when asked about his possession of a pistol, he stated that he never tossed any gun out of the moving vehicle. He advised that the last time he used a pistol was on Monday January 11th on his property in Brazoria, Texas. Aviles advised he was unsure if the officer was real or an imposter and stated that the officer attempted to run him over with the car before he was handcuffed. Aviles was confused as to why he was being charged for Evading arrest at this time. Aviles began to recall items being thrown into the car and advised that his back windshield began to shatter, before the traffic stop according to him. Aviles believed that after the traffic stop officers had him detained were attempting to cut off his fingers with a yellow axe. Aviles advised that he does not recall being intoxicated from drugs or alcohol at the time of the incident.*

*A copy of this audio interview will be added to the case file.*

**Found handgun**

Officer Howard located a small black pistol at the 7000 block of Lance Avenue. The pistol was located; it was not disturbed, and marked until detectives arrived on scene. The pistol was located in the grass, on the south side of the roadway, close to the intersection of Lance Ave and Red Bluff Rd (refer to Officer Colunga's supplement report for more information). The found pistol was a black colored Taurus PT111G2 with the serial number #TKM44229. Crime Scene Unit Detective S. Dudley photographed and swabbed it for DNA. Det. Dudley then began charting the firearm by removing a live round from the chamber of the pistol labeled "CBC 9mm". The magazine of the pistol was removed and six (6) rounds were found in the following order: "Winchester", "FC", "Blazer", "USA", "Winchester", and "Blazer". An ATF E-Trace on the firearm was later conducted on the Taurus that was located at the scene of the shooting. Detective Cooper provided Investigators with the trace case # T20210018606. The E-Trace report indicated that the firearm was purchased by

**EXHIBIT 19**

Jamie Lynn Gray Allen on 02/26/2017. The firearm was checked for stolen, with no records found at this time. The Taurus PT111G2 was labeled 009 and submitted to the Harris County Institute of Forensic Science for examination.

The following fired cartridge was recovered from 7000 Lance Avenue. The recovered fired cartridge fell from Aviles' vehicle as he exited the vehicle during the traffic stop. The Crime Scene Unit labeled and submitted item 012-9 to the Harris County Institute of Forensic Science for examination.

Plastic Bag Item 009 - One (1) Taurus PT111 Millennium G2 model 9mm Luger pistol, serial number TKM44229 (with magazine)

Item 012-9 - One (1) fired Blazer brand 9mm Luger cartridge case (received as Item 012 on submission form)

**Results of examination**

On February 21, 2021, Det. Mata received the firearms lab report for item 009 (Taurus PT111G2/SN:TKM44229) from the Harris County Institute of Forensic Sciences. The conclusions in this section are the opinions of the undersigned examiner. When a conclusion is verified, it is also the opinion of the verifier.

In reviewing the report, Firearms Examiner Jennifer Turner of the firearms lab analyzed Visual examination of the firearm, Item 009, revealed that it was found to function as expected when test fired under laboratory conditions when using the submitted magazine.

Item 012-9 was identified microscopically as having been fired in Item 009 based on agreement of the combination of individual characteristics and all discernible class characteristics.

**Gunshot Residue**

Officer J. Anderson responded to the scene to assist Officer Saldivar. Officer Anderson assisted in taking Aviles into custody. While doing so, he advised in his supplement report Aviles' boots were removed by him while The WRAP was being applied (see Officer Anderson's supplement report).

Officer Vega arrived on scene and assisted in controlling Aviles. Officer Vega listed in his supplement report, that Aviles was displaying erratic behavior and subsequently placed in the safety restraint device (The WRAP) to avoid harm to himself and others.

Officer D. Shechter also responded to the scene of the arrest. Officer Shechter listed in his supplement report that he believed Aviles was in a state of Excited Delirium because of his bouts of outward violence caused by the possibility of ingesting an unknown illicit substance. Officer Shechter assisted in applying the WRAP and later rode with the ambulance, Acadian Medics #956 to Memorial Hermann (6411 Hermann St). While at the hospital, Officer Shechter conducted a GSR test (gunshot residue) on driver and submitted into evidence (002.) It was at that time that the driver

EXHIBIT 19

was identified by his Texas issued identification card as Randy Gutierrez Aviles. Officer Shechter collected evidence such as Aviles' clothes and I.D. card (Officer Shechter's supplement report is included in this binder.)

## Results of Examination

The following items were delivered to the Harris County Institute of Forensic Sciences to be processed by Firearms Examiner Jennifer Turner. The conclusions in this section are the opinions of the undersigned examiner. When a conclusion is verified, it is also the opinion of the verifier.

On January 15, 2021, the following submissions were received from C.S.U. Detective S. Dudley. Item #002TR - Gunshot Residue Kit (S.E.M.) from Randy Gutierrez Aviles that was collected by Officer Shechter while at Hermann Memorial Hospital.

Item #002TR sample labeled Left Hand had four particles confirmed as having a composition characteristic of GSR (Pb-Ba-Sb) which likely resulted from activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing GSR.

Item #002TR sample labeled Right Hand had one particle confirmed as having a composition characteristic of GSR (Pb-Ba-Sb) which could have resulted from activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing GSR."

## Criminal Charges

Officer Mascorro contacted the Harris County District Attorney's Office and spoke with Chief Assistant District Attorney T. Alfred. The facts in the incident were explained to ADA Alfred and she accepted a Felony evading arrest charge on Aviles.

## Officer Saldivar's IAD History

Control# 1286
Case# 2018-19189
Complaint: Serious Misconduct
Date Received 11/21/2018
Complainant: Chief of Police
Disposition: Justified-Grand Jury No Bill

Control# 1274
Case# 2018-7963
Complaint: Officer Involved Shooting
Date Received 04/18/2018
Complainant: Chief of Police

EXHIBIT 19

Disposition: Exonerated

Control# 1073
Case# N/A
Complaint: Discharge of Firearm
Date Received 02/07/2009
Complainant: Chief of Police
Disposition: Justified

Control# 991
Case# 2006-27680
Complaint: Misconduct-Class I
Date Received 11/08/2006
Complainant: Chief of Police
Disposition: Not Sustained

The Pasadena Police Department Rule and Policies Manual states the following, which may or may not be applicable to the incident:

U3.1 POLICY (TBP: 6.07)
> This department values the protection and sanctity of human life. It is the policy of this department that members use only force reasonably necessary to bring an incident under control while protecting the lives of the member and others. If a member employs the use of physical force (other than the routine use of handcuffs or use of physical control techniques) or uses any impact, electrical, or chemical weapons, or discharges any firearm, which causes injury to the subject or complaint of injury from the subject, the member shall provide medical aid following the encounter

Sec. U3.4 PROCEDURES 2) Use of deadly force - Law enforcement officers are authorized to use deadly force to:
> a) To protect the officer or others from what is reasonably believed to be an immediate threat of death or serious bodily harm.
> b) Where practicable, prior to discharge of the firearm, officers shall identify themselves as law enforcement officers and state their intent to shoot.

C4.16 RESPECT FOR ALL
> Members will be courteous, civil, and respectful of all fellow officers, members, and the public at large, and will not use threatening, insulting, or profane language toward others whether on or off duty.

## SUMMATION

On January 12, 2021 at approximately 10:27 P.M., Officer Saldivar conducted a traffic stop on a white Volkswagen (NDJ7543) for failing to stop at a red light. Officer Saldivar activated his

EXHIBIT 19

emergency lights and siren as the vehicle passed him traveling in the opposite direction. Officer Saldivar informed Dispatch of a vehicle refusing to stop southbound on Red Bluff Road. The In Car video shows the vehicle's brake lights illuminated four seconds (00:34) after Officer Saldivar activated his emergency lights. The vehicle traveled less than a quarter mile and came to a complete stop twenty seconds after Officer Saldivar activated the emergency lights. Aviles exited the vehicle with his empty hands up and Officer Saldivar drew his weapon and ordered Aviles back into the vehicle. Officer Saldivar informed dispatch of the location and the vehicle's registration. Officer Saldivar ordered Aviles' hands out of the car while Officer Saldivar waiting for back up units to arrive. Aviles complied with Officer Saldivar's commands by positioning his empty hands in view outside the vehicle. While Aviles was following commands and audibly informed Officer Saldivar of his compliance. Officer Saldivar indicated the incident was approaching a deadly force incident and informed Aviles that he (Officer Saldivar) will shoot him (Aviles.) Aviles then began to be non-compliant by placing his right hand out of view back inside the vehicle. Officer Saldivar quickly approached Aviles' vehicle while continuing to give commands for him (Aviles) to put his hands up. Officer Saldivar's body camera footage shows Aviles' empty left hand up near the headliner and empty right hand at the bottom of the steering wheel. The vehicle begins to move forward slowly and Aviles head dips slightly forward. Officer Saldivar feared Aviles was reaching for a deadly weapon putting him (Officer Saldivar) in imminent fear for his life. Officer Saldivar indicated not see any weapon prior to firing ten shots at Aviles as the vehicle accelerated quickly gaining distance away from Officer Saldivar. The suspect fled the scene and was pursued by Officer Saldivar and responding officers. After a brief pursuit by officers, Aviles was taken into custody in a grassy area north of the 7600 block of Spencer Highway. It was discovered Aviles was the sole occupant of the vehicle and no weapons were found on his person or inside the vehicle at time of arrest.

End of Report

Detective M. Reyes
Public Integrity Unit



Pasadena 3293

EXHIBIT 19

# Pasadena Police Department
## Use of Force Report

Confidential  This report is prepared as an internal administrative instrument.  It is not to be released to persons r agencies outside the department without prior approval from the Chief of Police

Date: 1/13/2021    Time: 10:30 PM    Case #: 21-00587

Location of Incident:    7100 Lance Ave, Pasadena, TX 77505

Name: Aviles (Last)    Rand (First)    G (Mi)    9/25/1985 (DOB)    W (Race)    M (Sex)

### Nature of Initial Contact (check one only)

| | | |
|---|---|---|
| ☐ Felony Arrest | ☐ Call: Suspicious Person | ☐ Call: Stolen Auto |
| ☐ Felony Warrant | ☐ Call: Disturbance | ☐ Car Check |
| ☐ Misdemeanor Arrest | ☐ Call: Emotionally Disturbed | ☐ Pedestrian Check |
| ☐ Misdemeanor Warrant | ☐ Call: Armed Suspect | ☐ Search Warrant |
| ☒ Traffic Violation | ☐ Call: Domestic Violence | ☐ Possible Drug Related |

### Force Used Against Officer(s) (check all that apply):

#### Deadly Force
| | | | | |
|---|---|---|---|---|
| ☐ Revolver | ☐ Automatic | ☐ Shotgun | ☐ Knife | ☐ Other: |

#### Less than Deadly Force
| | | | |
|---|---|---|---|
| ☐ Fist | ☐ Feet | ☐ Teeth | ☐ Other: |

### Force Used by Officer(s) (check all that apply):

#### Deadly Force
| | | | |
|---|---|---|---|
| ☐ Revolver | ☒ Automatic | ☐ Shotgun | ☐ Other: |

#### Less than Deadly Force
| | | | | |
|---|---|---|---|---|
| ☐ Physical Force | ☐ Physical Restraint | ☐ ASP | ☐ O.C. Spray | ☐ Taser (See Taser Section)  Other: |

### Injuries

#### Injuries to Suspect
| | | | | |
|---|---|---|---|---|
| ☐ Death | ☐ Serious Injury | ☐ Minor Injury | ☐ Complaint of Injury | ☐ No Injury |

#### Treatment
| | | | |
|---|---|---|---|
| ☒ Admitted - Hospital | ☐ Treated – Released | ☐ Delayed Treatment | ☐ Refused Treatment |

Location of Treatment or Hospitalization:

Was Injury Photographed?    ☒ Yes    ☐ No    By Whom? _____    Unit # _____

### Injuries

#### Injuries to Officer (if so, complete Injury Report Forms)
| | | | | |
|---|---|---|---|---|
| ☐ Death | ☐ Serious Injury | ☐ Minor Injury | ☐ Complaint of Injury | ☒ No Injury |

#### Treatment
| | | | |
|---|---|---|---|
| ☐ Admitted - Hospital | ☐ Treated – Released | ☐ Delayed Treatment | ☐ Refused Treatment |

Location of Treatment or Hospitalization:

Was Injury Photographed?    ☐ Yes    ☒ No    By Whom? _____    Unit # _____

### Identify All Officers or Civilians Involved:

| Names: | Emp. No. | Used Force? | What Did They Witness? How Were They Involved? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Form # 196-G    Page 1 of 4    Revised: 07/02/08

EXHIBIT 19

Incident on Video:    Yes ☐ No ☐      Videotape Number or Other Identifier: _____

Supervisor Notified:     Yes ☐   No ☐     Name:

Responded to:    Scene ☐    Jail ☐    Other (Specify): _____    Did not Respond   ☐

Commander Notified:    Yes ☐ No ☐     Name:

Responded to:    Scene ☐    Jail ☐    Other (Specify): _____    Did not Respond   ☐

| TASER Usage Section | | |
|---|---|---|
| ☐ TASER Application | ☐ Arc Display Only | ☐ Laser Light Display Only |

TASER Serial #: _____     TASER Cartridge Number: _____

TASER Model:    TASER X26 ☐    Advanced TASER M26 ☐

Dart-probe Contact:   Yes ☐ No ☐    Drive-Stun Contact:   Yes ☐ No ☐    Subject Wearing Heavy Clothing:   Yes ☐ No ☐

Number of Air Cartridges Fired:     Number of Cycles Applied: _____

Air Cartridge Type(s):    15-ft ☐    21-ft ☐    21-ft XP (Yellow Cartridge) ☐

Approximate Target Distance at the Time of Deployment: _____ feet

Distance Between Probes: _____ inches    Need for Additional Applications:   Yes ☐ No ☐

Dart-Probes Penetrated Skin:   Yes ☐ No ☐    Dart-Probes Removed On-Scene:   Yes ☐ No ☐

| Diagram |
|---|



R    L     L    R

FRONT       BACK

(Place "Xs" at points of *dart-probe* contact and "Os" at points of *drive- stun* contact)

| Summary of Incident |
|---|

My name is Rigoberto R. Saldivar and I am a peace officer employed with the Pasadena Police Department and have been so employed for twenty-one years.

On January 12, 2021, I was assigned to Night Shift Patrol working from 10:00 p.m. to 6:00 a.m. At approximately 10:27 p.m., I was driving to the police station to pick up a subpoena from the front desk officer. I was driving northbound on the 5500 block of Red Bluff Rd. in the #2 lane of traffic. I stopped at a red light at the intersection of Red Bluff Rd. and Spencer. A moment later all the northbound lights turned green including the westbound turn lane. I then entered the intersection and immediately observed a white four door vehicle driving at a high rate of speed southbound on 5400 block of Red Bluff Rd. #1 lane of traffic. The white vehicle swerved into the eastbound turn only lane and by passed another vehicle stopped at the red light waiting in the #1 lane. The white vehicle disregarded the red light driving southbound towards two vehicles attempting to turn westbound from Red Bluff Rd. onto Spencer Hwy. The white vehicle continued southbound and swerved back into the #1 lane after clearing the intersection.

I quickly activated my emergency lights and siren and began pursuing the white vehicle southbound on the 5500 block of Red Bluff Rd. The white vehicle disregarded my emergency lights and siren and increased speed in an attempt to evade arrest at which time I notified channel one of the pursuit. The suspect then turned eastbound on the 6900 block of Lance Ave. I was

able to catch up to the white vehicle with my marked police unit at which time the white vehicle came to an abrupt stop at 7000 block of Lance Ave.  The driver, who was later identified as Randy Gutierrez Aviles w/m 09/25/85, immediately exited the driver's side door to the white vehicle with his hands up without being instructed to do so.

Due to my experience in law enforcement, I have found that normal and prudent citizens do not exit their vehicles during traffic stops unless instructed to do so.  During similar incidents where this happens the driver is attempting to hide or conceal contraband, preparing to evade arrest on foot, or attempting to harm the officer.

After seeing Mr. Avilas come to an abrupt stop and exit his vehicle, I immediately drew my service weapon pointing it at Mr. Avilas while taking cover behind my driver's side door.  I then yelled commands to Mr. Avilas not to move.  Mr. Avilas originally faced my patrol unit but after seeing my service weapon he turned and faced away.  He appeared to follow my command at which time I instructed Mr. Avilas to get back into his vehicle which he complied with.  I then provided Channel One with the registration to his vehicle (TX-NDJ7543) and of our location. I continued to give Mr. Avilas commands to place both his hands outside his window where I could see them.  Mr. Avilas originally followed my commands at which time I began waiting for my back units to arrive.  Mr. Avilas slowly began being defiant placing his hands inside the vehicle.  I instructed Mr. Avilas several times to keep his hands up believing if I could keep sight of his hands he would not be able to grab a weapon.  At this point I had moved away from my patrol vehicle in an attempt to maintain a visual on Mr. Avilas while waiting for additional units. Mr. Avilas refused to follow my commands at which time I warned Mr. Avilas I would shoot him if he did not keep his hands up.  Mr. Avilas continued to move his hands all the way inside his vehicle as I continued to yell commands for him to keep his hands up.  Mr. Avilas then dropped both his hands turning his body towards the passenger seat and reaching his right hand in the area of the center console and passenger seat area where weapons are commonly stored. Fearing Mr. Avilas was reaching for a deadly weapon putting me in imminent fear for my life, I began discharging my duty weapon at Mr. Avilas.  I do not know exactly how many rounds I fired.  Mr. Avilas then fled the scene driving eastbound on 7000 Lance Ave. at a high rate of speed.  Channel One was notified that shots had been fired and I was in pursuit of Mr. Avilas vehicle.  Mr. Avilas drove eastbound on Lance Ave. and northbound on Janice.  Avilas continued westbound on Strague Ave. and northbound on Trent Rd.  He then turned eastbound on Spencer Hwy. passing Kyle Chapman and then Center St.  Mr. Avilas then turned northbound into the O'Reilly's Auto Parts Store parking lot located at 7665 Spencer Hwy.  Mr. Avilas drove north through the parking lot and jumped the curb into a large open field north of the store.  Mr. Avilas drove north through the field and crashed his vehicle into a fence where he abandoned his vehicle and fled on foot.  I followed Mr. Avilas in my vehicle as he ran northbound through the field near a radio tower.  Mr. Avilas ran around the radio tower and began running southbound towards Spencer.  Mr. Avilas ignored my commands to stop and continued running southbound through the field as I pursued him on foot.  Mr. Avilas was tackled and taken into custody with assistance from other officers.  I attempted to administer first aid to Mr. Avilas but was unable too due to Mr. Avilas kicking and twisting his body.  I returned to my patrol unit while other officers assisted EMS with Mr. Avilas.

I was photographed and provided my weapon (Glock 19 9mm Caliber) and magazines to Pasadena crime scene investigators.

| | | | |
|---|---|---|---|
| Reporting Officer's Name: | R. Saldivar | Emp. # | 5750 |
| Reporting Officer's Signature: | | Date: | |

EXHIBIT 19

**Notification and Review**

Shift Supervisor _____ Date: _____
Shift Commander _____ Date: _____
Bureau Commander _____ Date: _____

Pasadena 3297

EXHIBIT 19



# PASADENA POLICE DEPARTMENT
## INTERNAL AFFAIRS - DISCHARGE OF FIREARMS REPORT

| Date of Report | Time of Report | Offense Report Case Number (If Any) |
|---|---|---|
| 01/21/2021 | 2:45 PM | 2021-00587 |

| Name of Officer | Assignment | Employee No. |
|---|---|---|
| R. Saldivar | Night Shift Patrol | 5750 |

| Date Weapon Fired | Time Weapon Fired | Location Where Weapon Fired |
|---|---|---|
| 01/13/2021 | 10:28 PM | 7100 Lance Avenue |

**Officer Discharging Firearm Was: (Check All That Apply)**

☒ In Uniform　☐ In Plain Clothes　☒ On Duty　☐ On Extra Employment　☐ Off Duty

| No. Of Shots Fired | Make of Weapon | Model | Caliber | Serial No. |
|---|---|---|---|---|
| 10 | Glock | 19 | 9MM | TBV181 |

## INJURED PERSON'S INFORMATION

| Name | Race | Date of Birth | Sex |
|---|---|---|---|
| Randy Gutierrez Aviles | W | 09/25/1985 | M |

**Address:** 5611 Buttercup St. League City, Tx

**Home/Business/Cell Phone No.:** (979) 202-5674

**Nature of Injuries:** Gun Shot Wound

**Was Injured Person Hospitalized?** ☒ Yes　☐ No　**Name of Hospital:** Memorial Hermann

**Attending Physician's Name:** Unknown

**Attending Physician's Address:** Unknown

**Attending Physician's Phone Number:** Unknown

## Describe Circumstances Surrounding Discharge Of Firearm (Use Additional Sheet If Necessary)

  My name is Rigoberto R. Saldivar and I am a peace officer employed with the Pasadena Police Department and have been so employed for twenty-one years.
On January 12, 2021, I was assigned to Night Shift Patrol working from 10:00 p.m. to 6:00 a.m. At approximately 10:27 p.m., I was driving to the police station to pick up a subpoena from the front desk officer. I was driving northbound on the 5500 block of Red Bluff Rd. in the #2 lane of traffic. I stopped at a red light at the intersection of Red Bluff Rd. and Spencer. A moment later all the northbound lights turned green including the westbound turn lane. I then entered the intersection and immediately observed a white four door vehicle driving at a high rate of speed southbound on 5400 block of Red Bluff Rd. #1 lane of traffic. The white vehicle swerved into

Pasadena 3298   EXHIBIT 19

**INTERNAL AFFAIRS – DISCHARGE OF FIREARMS REPORT (CONTINUED)**

the eastbound turn only lane and by passed another vehicle stopped at the red light waiting in the #1 lane. The white vehicle disregarded the red light driving southbound towards two vehicles attempting to turn westbound from Red Bluff Rd. onto Spencer Hwy. The white vehicle continued southbound and swerved back into the #1 lane after clearing the intersection.

I quickly activated my emergency lights and siren and began pursuing the white vehicle southbound on the 5500 block of Red Bluff Rd. The white vehicle disregarded my emergency lights and siren and increased speed in an attempt to evade arrest at which time I notified channel one of the pursuit. The suspect then turned eastbound on the 6900 block of Lance Ave. I was able to catch up to the white vehicle with my marked police unit at which time the white vehicle came to an abrupt stop at 7000 block of Lance Ave. The driver, who was later identified as Randy Gutierrez Aviles w/m 09/25/85, immediately exited the driver's side door to the white vehicle with his hands up without being instructed to do so.

Due to my experience in law enforcement, I have found that normal and prudent citizens do not exit their vehicles during traffic stops unless instructed to do so. During similar incidents where this happens the driver is attempting to hide or conceal contraband, preparing to evade arrest on foot, or attempting to harm the officer.

After seeing Mr. Avilas come to an abrupt stop and exit his vehicle, I immediately drew my service weapon pointing it at Mr. Avilas while taking cover behind my driver's side door. I then yelled commands to Mr. Avilas not to move. Mr. Avilas originally faced my patrol unit but after seeing my service weapon he turned and faced away. He appeared to follow my command at which time I instructed Mr. Avilas to get back into his vehicle which he complied with. I then provided Channel One with the registration to his vehicle (TX-NDJ7543) and of our location.

I continued to give Mr. Avilas commands to place both his hands outside his window where I could see them. Mr. Avilas originally followed my commands at which time I began waiting for my back up units to arrive. Mr. Avilas slowly began being defiant placing his hands inside the vehicle. I instructed Mr. Avilas several times to keep his hands up believing if I could keep sight of his hands he would not be able to grab a weapon. At this point I had moved away from my patrol vehicle in an attempt to maintain a visual on Mr. Avilas while waiting for additional units. Mr. Avilas refused to follow my commands at which time I warned Mr. Avilas I would shoot him if he did not keep his hands up. Mr. Avilas continued to move his hands all the way inside his vehicle as I continued to yell commands for him to keep his hands up. Mr. Avilas then dropped both his hands turning his body towards the passenger seat and reaching his right hand in the area of the center console and passenger seat area where weapons are commonly stored. Fearing Mr. Avilas was reaching for a deadly weapon putting me in imminent fear for my life, I began discharging my duty weapon at Mr. Avilas. I do not know exactly how many rounds I fired. Mr. Avilas then fled the scene driving eastbound on 7000 Lance Ave. at a high rate of speed. Channel One was notified that shots had been fired and I was in pursuit of Mr. Avilas vehicle. Mr. Avilas drove eastbound on Lance Ave. and northbound on Janice. Avilas continued westbound on Strague Ave. and northbound on Trent Rd. He then turned eastbound on Spencer Hwy. passing Kyle Chapman and then Center St. Mr. Avilas then turned northbound into the O'Reilly's Auto Parts Store parking lot located at 7665 Spencer Hwy. Mr. Avilas drove north through the parking lot and jumped the curb into a large open field north of the store. Mr. Avilas drove north through the field and crashed his vehicle into a fence where he abandoned his vehicle and fled on foot. I followed Mr. Avilas in my vehicle as he ran northbound through the field near a radio tower. Mr. Avilas ran around the radio tower and began running southbound towards Spencer. Mr. Avilas ignored my commands to stop and continued running southbound through the field as I pursued him on foot. Mr. Avilas was

3

EXHIBIT 19

**INTERNAL AFFAIRS – DISCHARGE OF FIREARMS REPORT (CONTINUED)**

tackled and taken into custody with assistance from other officers. I attempted to administer first aid to Mr. Avilas but was unable too due to Mr. Avilas kicking and twisting his body. I returned to my patrol unit while other officers assisted EMS with Mr. Avilas.

I was photographed and provided my weapon (Glock 19 9mm Caliber) and magazines to Pasadena crime scene investigators.

EXHIBIT 19

## PASADENA POLICE DEPARTMENT
### QUALIFICATION SCORE SHEET

Emp. #: 5750

Name: Saldivar, Rigo

| Course # | Date | Make | Model | Pass/Fail | Inspected By | Signature |
|---|---|---|---|---|---|---|
| H 20 | 4/0/20 | G | 19 | PAS | MK | |
| S 20 | 4/10/20 | Rem | 870 | PAS | RM | |
| R 20 | 6/16/20 | BM | XM1SE2S | Pass | SR | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ECD: _____  Cartridge: _____  Cartridge: _____

Duty Ammo Issued: 4/16/20  Caliber: G

Duty Ammo Issued: _____  Caliber: _____

EXHIBIT 19

# IAD History for Officer R. Saldivar

**Control# 1286**
**Case# 2018-19189**
**Complaint: Serious Misconduct**
**Date Received 11/21/2018**
**Complainant: Chief of Police**
**Disposition: Justified-Grand Jury No Bill**

**Control# 1274**
**Case# 2018-7963**
**Complaint: Officer Involved Shooting**
**Date Received 04/18/2018**
**Complainant: Chief of Police**
**Disposition: Exonerated**

**Control# 1073**
**Case# N/A**
**Complaint: Discharge of Firearm**
**Date Received 02/07/2009**
**Complainant: Chief of Police**
**Disposition: Justified**

**Control# 991**
**Case# 2006-27680**
**Complaint: Misconduct-Class I**
**Date Received 11/08/2006**
**Complainant: Chief of Police**
**Disposition: Not Sustained**

EXHIBIT 19