City of Pasadena Law Enforcement

| WRITTEN DIRECTIVE | Last Revised: 01/21/2020 |
|---|---|
| Subject:<br>*OPERATIONAL POLICIES,*<br>*USE OF FORCE* | Revised Date: 05/28/2020 |
| | Reference: *TBP – 3.01, 3.02, 3.04, 3.06, 6.01, 6.02, 6.03, 6.06, 6.07, 6.08, 6.09, 6.10* |

### U3.1    POLICY *(TBP: 6.07)*

This department values the protection and sanctity of human life. It is the policy of this department that officers use only force reasonably necessary to bring an incident under control while protecting the lives of the officer and others. If a member employs the use of physical force (other than the routine use of handcuffs or use of physical control techniques) or uses any impact, electrical, or chemical weapons, or discharges any firearm, which causes injury to the subject or complaint of injury from the subject, the member shall provide medical aid following the encounter.

The use of force must be objectively reasonable. The officer must use only the force that a reasonably prudent officer would use under the same or similar circumstances. The officer's actions will be reviewed based upon the information known to the officer at the time the force was used. Information discovered after the fact will not be considered when assessing the reasonableness of the use of force. Officers are prohibited from using any force as a means of punishment or in the process of an interrogation.

### U3.2    PURPOSE

The purpose of this policy is to provide law enforcement officers of this agency with guidelines for the use of deadly and non-deadly force. Nothing in this policy is intended to create any benefit for third parties, nor does this policy set forth a higher standard of care with respect to third party claims.

### U3.3    DEFINITIONS *(TBP: 6.01, 6.02)*

**Deadly Force**: Any use of force that creates a substantial risk of causing death or serious bodily injury.

**Non-Deadly Force:** Any use of force other than that which is considered deadly force. Non-deadly force includes, but is not limited to, handcuffing and any physical force, effort, or technique used against another.

**Serious Bodily Injury:** "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

**Objectively Reasonable**: This term means that, in determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of the known circumstances, including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to themselves and the community. In evaluating the reasonable application of force, officers may consider their own age, size, strength, and skill level with department weapons, state of health, and the number of officers opposing the number of suspects.

**U3.4**        **PROCEDURES** *(TBP: 6.01, 6.02, 6.09)*

1) Use of non-deadly force:

    a) Where deadly force is not authorized, officers may use only that level of force that is objectively reasonable and necessary to bring an incident under control.
    b) Officers are authorized to use department-approved, non-deadly force techniques and issued equipment when one or more of the following apply:

        i) To protect the officer or others from physical harm.
        ii) To restrain or arrest an individual who is resisting a lawful arrest or detention.
        iii) To bring an unlawful situation safely and effectively under control.

2) Use of deadly force - Law enforcement officers are authorized to use deadly force to:

    a) To protect the officer or others from what is reasonably believed to be an immediate threat of death or serious bodily harm.
    b) Where practicable, prior to discharge of the firearm, officers shall identify themselves as law enforcement officers and state their intent to shoot.

3) Deadly force restrictions:

    a) Warning shots shall not be fired.
    b) Firearms shall not be discharged at a moving vehicle in an attempt to disable the vehicle.
    c) Officers threatened by an oncoming vehicle shall make a reasonable effort to attempt to move out of its path, if possible, instead of discharging a firearm at it or any of its occupants. However, if an officer reasonably believes that a person is immediately threatening the officer or another person with deadly force by means of a vehicle, an officer may use deadly force against the driver of the vehicle.
    d) Officers are not authorized to use deadly force against suspects to prevent the consequences of self-imposed bodily injury or suicide.

4) Officers may use deadly force to destroy an animal that represents a threat to public safety or as a humanitarian measure if the animal is seriously injured and the officer reasonably believes that deadly force can be used without harm to the officer or others. In these circumstances, a supervisor shall be contacted prior to the use of deadly force if time permits.

**U3.5**        **LIMITATIONS ON FORCE**

The following acts associated with the use of force are prohibited:

1) Application of a choke hold or carotid-control holds, except when the officer reasonably believes such holds are the only means of protecting himself or herself or another person from an imminent threat of serious physical injury or death and the use of deadly force would be authorized.
2) Use of flashlights as batons. An officer may use a flashlight or other object designed for a use other than as a weapon only to defend himself or herself or another from imminent serious bodily injury or death and then only if departmentally sanctioned methods are not available or are impractical. The use of a flashlight

or other alternative weapon under such circumstances, depending on the manner of use, may be deemed an application of deadly force.

**U3.6	DUTY TO INTERVENE**

1) Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intervene to prevent the use of such force.
2) Officers shall promptly report these observations to a supervisor.

**U3.7	DOCUMENTATION** *(TBP: 6.03, 6.06)*

1) Officers are required to complete and submit Form 196-G, Use of Force, when the officer uses force greater than a physical control technique; e.g., come-a-longs, leverage techniques, or any application of force by an officer that results in injury or complaint of injury. The narrative shall include the actions of the suspect that necessitated the use of force, details of the force used by the reporting officer, as well as any injury to the suspect or complaints of injury, medical treatment received, or refusal of medical treatment.
2) Officers are required to complete and submit Form168-G, Discharge of Firearms Report, anytime an officer intentionally or accidentally discharges a firearm under any circumstance. This requirement does not apply to the intentional discharge of weapons during training, qualifications, or sporting events.  These forms will be submitted through the Chain of Command to the Internal Affairs Supervisor for review.
3) The on-duty supervisor or commander will be notified immediately of the use of force and may be required to respond to the scene.
4) Photographs of the subject will be taken as soon as possible after the use of force to document any injury or lack of injury.
5) Submit a use of force form via chain of command to the Chief of Police prior to the end of shift describing the incident, the force used, and any medical aid rendered. The use of force form shall be in addition to any other required reports.

**U3.8	TRAINING** *(TBP: 3.01, 3.02, 3.04, 3.06)*

1) All officers shall receive training in the use of their firearms and all non-lethal weapons authorized by the department, hands-on arrest and defensive tactics, as well as the "Use of Force" policy prior to performing any law enforcement duties.
2) All officers shall be trained and qualified with their firearms at least bi-annually.
3) All officers shall receive training in the department's "Use of Force" policy at least annually.
4) All officers shall receive hands-on arrest and defensive-tactics training at least every two years.
5) Officers shall receive training in all non-lethal weapons issued or used by the department and demonstrate proficiency with those weapons at least every two years.
6) All use of force training shall comply with the standards established by TCOLE.

**U3.9	DEPARTMENTAL REVIEW** *(TBP: 6.08, 6.10)*

1) The officer's supervisors and Internal Affairs shall review all reported uses of force to determine the following:

    a) If departmental orders were violated.
    b) If the relevant departmental policy was clearly understandable and effective enough to cover the situation.
    c) If departmental training was adequate.
    d) If departmental equipment operated properly.

2) At least annually, the Chief of Police shall conduct an analysis of use-of force incidents to be made available to the public and to determine if additional training, equipment, or policy modifications may be necessary.
3) The department shall comply with all state mandated reporting requirements.
4) Internal Investigations:

    a) An internal investigation will be conducted on any firearms discharge (other than training), and any other use of deadly force by any member of the department. An internal investigation may be conducted on other use of force incidents if a violation of law or department policy is suspected. In addition to the internal investigation, where violation of law is suspected, a criminal investigation may also be conducted of any incident involving the discharge of firearms, or a use of force incident where an officer or person is injured or killed. The results of the investigation shall be submitted to the office of the District Attorney.

5) Assignment:

    a) Pending administrative review, any officer whose actions have resulted in the death or serious bodily injury of another person, either through the intentional use of force or by accident involving a use-of-force weapon or action or a vehicle accident, shall be removed from line-duty assignment. This action protects both the interests of both the officer and the community until the situation is resolved. This re-assignment is not considered punitive in nature.

**U3.10    WRAP RESTRAINT**

The WRAP provides a safe and quick method of controlling and immobilizing a violent or potentially violent/combative subject who has been detained or taken into custody. This policy is intended to familiarize Department personnel with the WRAP and procedural guidelines for its use.

**U3.10.1    CRITERIA FOR USE**

The WRAP can be used prior to or after a violent or potentially violent/combative subject is controlled using approved departmental methods. Like any restraint device, do not assume the WRAP is escape proof. Once applied, the subject will not be left unmonitored.

The WRAP should be considered for use under the following situations:

1) Whenever you anticipate possible violent/combative behavior.
2) To immobilize a violent/combative subject.
3) To limit violent/combative subjects from causing injury to themselves or others.
4) To prevent violent/combative subjects from causing property damage by kicking.
5) To restrain subjects after a chemical spray or stunning device is used.

6) When conventional methods of restraint are not effective.
7) In transportation of violent/combative subjects.

### U3.10.2   REPORTING USE OF THE WRAP

1) Any member, who applies The WRAP for any reason, other than at an approved training exercise, will notify an on-duty supervisor.
2) The incident will be appropriately documented according to department policy.

### U3.10.3   USE OF DEVICE

1) Applying the "WRAP":

   a) The Device can be applied by as few as two members if the subject is passive. Violent or combative subjects, three or more members should be used to apply the device.
   b) Only qualified members who have received training in the proper use of the device should apply the device.
   c) Once secured the subject shall be placed in the seated position or on their side. This will increase the oxygen recovery rate and reduce the incidence of respiratory fatigue or positional asphyxia.
   d) The shoulder harness should never be tightened to the point that it interferes with the subject's ability to breathe.
   e) The subject shall be under constant observation while the device is deployed. The subject shall never be left unmonitored.
   f) The member should look for signs of labored breathing, signs of distress, sudden calmness, or change in color, medical personal are to be notified.
   g) The WRAP restraint device is a temporary restraining device and is not escape proof. The leg bands and shoulder harness must be checked for tightness and re-tightened or loosened as necessary until the WRAP is removed.

2) Transporting or escorting restrained subjects:

   a) To carry the restrained person, a minimum of 2 personnel should be used. Depending on the size and weight of the subject, more may be necessary. Proper lifting techniques should be used to prevent injury to staff. Use of a gurney in the seated position is the optimal method for escort.
   b) Restrained subjects may be transported in a patrol unit. Prior to transport, re-check all belts to ensure that they are securely fastened. The subject shall be in a seated upright position and secured by a seat belt.

      i) When transported by ambulance, the subject shall be accompanied by an officer.

8) Anytime the devise is used, the circumstances requiring its use shall be documented via an incident report. The incident report will include:

   a) Summary of events leading up to the use of the device.
   b) All persons present, including medical personnel.
   c) Time the subject was restrained.
   d) How the subject was transported or escorted.

e) Observations of the subject's physical and physiological actions.
f) Any known or suspected drug use or medical problems.

### U3.10.4  TRAINING

Only qualified personnel who have successfully completed the Department's training in the use of the WRAP should use this restraining device.