United States District Court
Southern District of Texas
**ENTERED**
August 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDY AVILES, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:22-cv-03571 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| RIGOBERTO R. | § | |
| SALDIVAR and CITY | § | |
| OF PASADENA, TX, | § | |
| Defendants. | § | |

OPINION AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The motion for summary judgment by Plaintiff Randy Aviles is denied. Dkt 47.

The motion for summary judgment by Defendant City of Pasadena is granted as to the claim alleging that it has a custom or policy of protecting officers that use excessive force. It is denied in all other respects. Dkt 40.

1. Background

This action concerns the non-fatal shooting of Plaintiff Randy Aviles by Defendant Rigoberto R. Saldivar, who is a police officer employed by Defendant City of Pasadena. Saldivar was indicted for this shooting in January 2023. Dkt 40-23 at 76, 94–95, 113, 203.

A detailed recitation of the allegations in this matter are set out in a previous order denying a motion to dismiss brought by the City. See Dkt 30 at 1–4. In very short summary, Aviles alleges that Saldivar previously shot and killed an unarmed suspect named Nathan Schenk during a traffic stop in 2018; City officials afterwards didn't discipline Saldivar despite investigator recommendations

to do so; and three years later, Saldivar shot the unarmed Aviles, also during a traffic stop.

Against Saldivar, Aviles asserts a claim for excessive force. Dkt 1 at ¶¶49–55. Against the City, he asserts claims alleging that (i) it failed to discipline, train, or supervise Saldivar after he previously shot and killed Schenk, and (ii) it has a custom and practice of protecting officers who use excessive force. Dkt 1 at ¶¶56–61.

Now on summary judgment, it suffices to note that at least some record evidence backs up each of those factual allegations. The only additional evidence introduced is the fact that Saldivar also engaged in a non-fatal shooting four months prior to the Schenk shooting. In April 2018, Saldivar encountered Angel Ramirez after receiving a report of suspicious activity in the neighborhood. Saldivar exited his patrol vehicle; shined his light on Ramirez; noticed a gun in Ramirez's hand; opened fire without prior verbal warning; and discharged four shots at Ramirez, none of which hit him. It was later discovered that the gun Ramirez was holding was a pellet gun. Dkt 47 at 11, citing Dkt 47-3 at 18.

Pending is a motion by Aviles for summary judgment that (i) the Chief of Police, Joshua Bruegger, was the City policymaker, (ii) he exhibited deliberate indifference because he was on notice that Saldivar needed training, supervision, or discipline and failed to require it, and (iii) this failure to discipline Saldivar constituted a policy or custom of the City and was the moving force behind Saldivar's shooting of Aviles. Dkt 47.

Also pending is a motion for summary judgment by the City that there is no evidence (i) of failure to discipline, train, or supervise Saldivar because, among other things, there is no evidence as to the need for disciplinary action due to his past conduct or as to deliberate indifference by the City's policymaker, and (ii) that the City has a custom or policy of protecting officers who use excessive force. Dkt 40.

2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact. See *Trent v Wade*, 776 F3d 368, 376 (5th Cir 2015). The Fifth Circuit holds that a fact is *material* if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Sossamon v Lone Star State of Texas*, 560 F3d 316, 326 (5th Cir 2009) (citations omitted). And the Fifth Circuit holds that a *genuine dispute of material fact* exists "when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015), quoting *Anderson v Liberty Lobby*, 477 US 242, 248 (1986).

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and

3

admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

When parties file opposing motions for summary judgment on the same issue, the court reviews each motion independently, each time viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010). Each movant must establish that no genuine dispute of material fact exists, such that judgment as a matter of law is in order. Ibid; see also *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009).

3. Analysis

Genuine disputes of material fact largely preclude summary judgment. The only exception is that the City is entitled to summary judgment as to the claim regarding widespread practice or custom.

a. Failure to discipline, train, or supervise

Aviles brings two claims against the City that seek to hold it liable under *Monell v Department of Social Services*, 436 US 658 (1978). In the first, he alleges that the City—through its Chief of Police—failed to discipline, train, or supervise Saldivar after he shot and killed Schenk, resulting in the shooting of Aviles three years later. See Dkt 1 at ¶ 60.

Bodycam video of the Schenk shooting exists. There's no dispute that it was reviewed by Bruegger. But the video isn't of high quality or clarity, and the parties join issue as to what's discernible on it. The City argues that, before the shooting of Aviles, the facts "did not support disciplinary action against Officer Saldivar," as the bodycam video is "a recording of darkness that does not distinctly depict anything." Dkt 40 at 20. It further states that "without crediting the Schenk recording," there's "no information a governmental policymaker could reasonably rely on to conclude Officer Saldivar posed a risk." Id at 23. And so, it says, Bruegger (and thus, the City) can't be found to have been deliberately indifferent. Ibid. Aviles responds that the

4

need for discipline "was so obvious" after Saldivar shot Schenk in the back. Dkts 52 at 19 & 47 at 18. He argues that the video clearly shows Aviles shooting an unarmed Schenk in the back, and so refusal by Bruegger to discipline Saldivar constitutes intentional and deliberate indifference. Dkts 52 at 21–22 & 47 at 20.

The lynchpin of the competing arguments is what, exactly, is seen on the bodycam video of the Schenk shooting. This raises an inherent, underlying dispute of material fact. It isn't for this Court to pick one version over the other, where each forwards what's at least a plausible description that a jury might determine it sees upon its own review.

Indeed, the following remark from the City immediately undercuts its motion, while vividly capturing exactly why it must go to the jury: "And regardless of the creative interpretations *of the two Detectives who claim to be capable of seeing Officer Saldivar shoot Schenk as he crawls away*, no reasonable jury who views the recording that interpretation is based on could reasonably accept the Detective's testimony in that regard." Dkt 40 at 12–13 (emphasis added). And the jury will also receive the following or similar testimony as to the viewing of that video by Bruegger in the presence of one of the referenced investigating officers:

> Specifically, Detective Michael Cooper testified at his deposition that he informed Chief Bruegger that Defendant Saldivar had shot Nathan Schenk while Mr. Schenk was on his hands and knees crawling away. Cooper testified that he played the body camera video of the shooting for Chief Bruegger, both at regular speed and in slow motion. Cooper also testified that he showed the Chief the video of the Schenk shooting frame by frame to show the muzzle flash from Saldivar's gun as Schenk was on his hands and knees. Cooper testified that he stopped the video to show

5

>  when Saldivar shot with Schenk on his hands and knees.

Dkt 47 at 7 (summary from Aviles motion, deposition citations omitted).

There is more, but that's enough. One wonders, in the face of such testimony, why the City even presses for summary judgment on an issue such as this. For the City itself concedes that after-the-fact investigating officers actually *agreed* at least in some respects with what Aviles believes is shown on the bodycam footage. And stark testimony as to Bruegger's viewing of that video—along with the conclusion of investigating officers at the time—will be available for the jury's consideration, along with apparent evidence that Bruegger neither undertook follow-up with Saldivar, nor disciplined or retrained him in any way. See Dkt 47 at 10 (Plaintiff's motion, citing Bruegger deposition).

Neither party shows, as a matter of law, that Bruegger was or was not deliberately indifferent when he refused to discipline Saldivar after watching the bodycam video of the Schenk shooting. The motions for summary judgment will be denied as to this claim.

>  b.  Official policy or custom

The second *Monell* claim alleges that the City has a general custom and practice of protecting officers who use excessive force, which resulted in the shooting of Aviles. Dkt 1 at ¶60.

"Official policy establishes culpability, and can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v City of Fort Worth*, 588 F3d 838, 847 (5th Cir 2009), quoting *Piotrowski*, 237 F3d at 579 (internal citation omitted). As to custom, then, proof of a *pattern of conduct* is typically necessary. And that "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson,* 588 at 851,

6

quoting *McConney v City of Houston*, 863 F2d 1180, 1184 (5th Cir 1989).

The Fifth Circuit has found that neither twenty-seven instances of excessive force, nor eleven instances of warrantless entry, were sufficient to establish a pattern of constitutional violations. *Fuentes v Nueces County, Texas*, 689 Fed Appx 775, 778 (5th Cir 2017), citing *Peterson*, 588 F3d at 850–852, and *Pineda v City of Houston*, 291 F3d 325, 329 (5th Cir 2002); see also *Chavez v Alvarado*, 550 F Supp 3d 439, 457 (SD Tex 2021) (compiling cases and finding two instances of excessive force insufficient to show pattern). And in *Carnaby v City of Houston*, the Fifth Circuit held, "Two reports over a period of four years, in a city the size of Houston, do not constitute a pattern." 636 F3d 183, 190 (5th Cir 2011).

But the question here isn't simply as to *instances of excessive force* alleged against Saldivar or even occurring across the entirety of the City's police department. Instead, the alleged *general custom and practice* is with respect to the City *protecting* officers who allegedly use excessive force. Aviles appears to approach the issue with only instances of excessive force in mind, and even then fails to mount evidence of any broader practice beyond Saldivar himself. For example, see Dkt 52 at 25 (arguing "failure to discipline" Saldivar and "willingness to protect" him). But nothing is submitted to suggest that his general theory of *protection* occurred with such frequency as to constitute a *custom and practice*. The motion will thus be granted on that basis.

Even assuming that the inquiry is appropriately focused solely on conduct by Saldivar, the City convincingly argues that there simply aren't enough incidents to establish a custom or practice here. Plaintiff alleges only three instances from 2018 through 2021. Dkts 1 at ¶¶2 (shooting of Aviles), 28 (shooting of Schenk) & 50 at 7 (shooting of Ramirez). Nothing in the allegations suggests that the Ramirez incident is even fairly characterized as a clear use of excessive force, given Saldivar's apparent action and belief in the presence of a gun (even if it was

7

later determined to be a pellet gun). See Dkt 53 at 5–9. But even including that instance, a showing of three instances of excessive force over the same number of years isn't "sufficiently numerous" as a matter of law, especially when arrayed against Saldivar's career of twenty years with the City. See Dkt 40 at 10 (as to career); *Peterson*, 588 F3d at 851 (granting summary judgment in favor of defendant in case involving twenty-seven instances); cf *Ramirez v Escajeda*, 298 F Supp 3d 933, 943 (WD Tex 2018) (denying motion to dismiss with respect to showing of eight pleaded instances).

Aviles cites *Brown v Bryan County* for the proposition that, "under certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." Dkt 52 at 19, citing 219 F3d 450, 459 (5th Cir 2000). But the Fifth Circuit has repeatedly declined to extend this "single incident exception" and describes it as "narrow." *Burge v St Tammany Parish*, 336 F3d 363, 373 (5th Cir 2003); see also *Piotrowski*, 237 F3d at 582 (stating "it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case"). And in any event, in *Brown*, the Fifth Circuit found a failure to train where the offending officer had no law enforcement background, no training, little supervision, and a history of questionable "takedown" arrests during a short tenure. 219 F3d 455–456; see also Dkt 30 at 9. Those facts aren't present here.

Summary judgment will be entered in favor of the City as to this claim.

### c. Policymaker

In order to prevail on a *Monell* claim, a plaintiff must show (i) an official policy (ii) promulgated by a municipal policymaker (iii) that was the "moving force" behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001) (citations omitted). Aviles seeks summary judgment that Bruegger was a municipal policymaker. Dkt 47 at 18.

The Fifth Circuit holds that determination of whether someone is an "official policymaker" is an issue of state law. *Beattie v Madison County School District*, 254 F3d 595, 602 (5th Cir 2001), citing *Brady v Fort Bend County*, 145 F3d 691, 698 (5th Cir 1998). It's curious, then, that the City doesn't itself seek affirmative summary judgment in its own motion as to who the City's policymaker is in this regard. See Dkt 40; cf *Covington v City of Madisonville, Texas*, 2022 WL 1910141, *7 (SD Tex), aff'd, 2023 WL 5346375 (5th Cir), cert denied, 144 S Ct 570 (2024) (granting defendant summary judgment upon affirmative motion, finding contrary evidence of "discretionary or decision-making authority" insufficient to create material issue of disputed fact). Even so, in its response to the motion for summary judgment by Aviles, the City flatly argues that the classification of Bruegger as a City policymaker is improper because his authority is limited by City Council oversight. Dkts 50 at 12–17 & 53 at 9–12. It also sponsors a May 2024 declaration by Bruegger wherein he declares that he isn't a policymaker. Dkt 40-1 at 4–5.

To the contrary, Aviles submits excerpts from Bruegger's deposition in this action, where he testified that his role involved "setting the policy" of the City's police force and making the "final decision" when it came to discipline, and that he was the "only one" who could take disciplinary action against an officer. Dkt 47-3 at 16–18. His after-the-fact declaration thus isn't well-received, given that the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *SWS Erectors, Inc v Infax, Inc*, 72 F3d 489, 495 (5th Cir 1996). That's all the more true when it is conflicting, sworn testimony from the *same* witness.

Complicating this quite a bit more is Fifth Circuit precedent finding that, in some circumstances, Texas police chiefs may be final policymakers for *Monell* purposes. For example, see *Garza v City of Donna*, 922 F3d 626, 637 (5th Cir 2019); *Backe v City of Galveston, Texas*, 2 F Supp 3d 988, 1000–1001 (SD Tex 2014). Decision by the

9

Fifth Circuit in *Zarnow v City of Wichita Falls, Texas* goes to the heart of this issue. 614 F3d 161 (5th Cir 2010). It there held, "An official may be a policymaker even if a separate governing body retains some powers." Id at 168. It also observed that the "governing body" of a city in situations where "'it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role.'" Id at 167, quoting *Bennett v City of Slidell*, 728 F2d 762, 769 (5th Cir 1984, *en banc*). And specifically in that case, the Fifth Circuit determined that an official may be a policymaker even if the municipality can limit or revoke the official's authority, and that the municipality's "administrative review must be precise in order to attach the presumption against policymaking." Id at 168, citing *Beattie v Madison County School District*, 254 F3d 595, 603 (5th Cir 2001).

Pasadena City Ordinance 30-4 states, "It shall be the duty of the chief of police to *supervise and direct* the police officers of *his department* in the conduct of their offices and performance of their duties as such, and each police officer is specially charged with *the duty of following the instructions of and cooperating with the chief of police*." Dkt 40-13 (emphasis added). Aviles in essence argues that this supervisory power over other police officers qualifies Chief Bruegger as a policymaker—like in *Zarnow*, where the chief of police was given the authority to control and direct the police department. Dkt 54 at 2, citing *Zarnow*, 614 F3d at 168. But unlike *Zarnow*, Aviles doesn't provide examples of "General Orders" promulgated by the chief of police to control internal policy of the police department. See 614 F3d at 168. Even so, as noted above, Bruegger in his deposition testified that, in fact, he set policy for the City's police force and was the "only one" who could take disciplinary action against an officer. Dkt 47-3 at 16–18.

Whether Bruegger did, or could, promulgate internal policy is a critical question that isn't sufficiently addressed by the submissions made at this stage of the proceedings. In practical terms, what this means for now is simply that the motion by Aviles for summary judgment that Bruegger

10

was the policymaker must be denied. The unusual briefing posture beyond that—with the City not seeking affirmative relief on this issue in its own motion, while seeming to assert entitlement to such relief in its response to the Aviles motion—doesn't lend itself to resolution on summary judgment.

This doesn't mean that the issue necessarily will go to the jury. The Fifth Circuit observes that "the identity of the policymaker is a question of law, not of fact—specifically a question of state law. *Groden v City of Dallas, Texas*, 826 F3d 280, 284 (5th Cir 2016), citing *City of St Louis v Praprotnik*, 485 US 112, 124 (1988). As such, the parties must present this issue again with their pretrial filings, with clear briefing as to any affirmative request for relief. And in this regard, the parties must submit their positions, with supporting evidence, as to who exactly each submits is the municipal policymaker in this respect. It will then be addressed at the final pretrial conference.

The motion by Aviles for summary judgment that Chief of Police Joshua Bruegger is a policymaker for the City will be denied.

4. Conclusion

The motion for summary judgment by Defendant City of Pasadena is GRANTED IN PART and DENIED IN PART.

It is GRANTED as to the claim alleging that it has a custom or policy of protecting officers that use excessive force. That claim is DISMISSED.

The motion is DENIED in all other respects. Dkt 40.

The motion for summary judgment by Plaintiff Randy Aviles is DENIED. Dkt 47.

SO ORDERED.

Signed on     August 19, 2024    , at Houston, Texas.

                                                Hon. Charles Eskridge
                                                United States District Judge